**Ex parte Laroyce Lathair SMITH.**

No. 36512–01.

Court of Criminal Appeals of Texas,
En Banc.

July 15, 1998.

Cynthia J. Cline, Houston, for appellant.

Sue Korioth, Asst. Dist. Atty., Dallas, Matthew Paul, State's Atty., Austin, for State.

## OPINION

WOMACK, Judge, delivered the opinion of the Court which McCORMICK, Presiding Judge, and MANSFIELD, KELLER, PRICE and HOLLAND, Judges, joined.

Our previous opinions are withdrawn.

By a separate order which was entered on April 22, 1998, the Court has dismissed this application for post-conviction habeas corpus relief because it was filed 129 days late.

The statute which was enacted in 1995 to regulate the procedure for these cases requires the application to be filed within 180 days. Code of Criminal Procedure article 11.071, § 4(a). The convicting court may find good cause to file the petition as late as 90 days thereafter, but "an applicant cannot establish good cause for untimely filing of an application filed after the 91st day after the applicable filing date." *Id.*, § 4(f).

In this case the convicting court not only gave the applicant the 90–day extension, it gave the applicant another, unauthorized, 30–day extension. On the day that the trial court granted the unauthorized, 30–day extension, the Executive Administrator of this Court informed the applicant's counsel that such an extension was unauthorized and advised counsel not to rely on it. The reliability of the 30–day extension was mooted when the applicant failed to meet even that deadline. The petition was filed 9 days after the unauthorized, 30–day extension expired. There is no claim that the applicant relied in good faith on an improper order of the trial court. *Cf. Ex parte Ramos,* 977 S.W.2d 616 (Tex.Cr.App.1998).[1]

---

1. The applicant has filed a suggestion for reconsideration in which he claims that his late filing was authorized by this Court's order of April 22, 1997, which gave him permission to file a skeletal application so that the time limits of the federal Antiterrorism and Effective Death Penalty Act could be tolled. His claim is not supported by the record. His motion and our order contemplated that the skeletal application would be

supplemented, and our order specified, "Any supplemented application shall be deemed an original, not a successor, application." No other action was taken on the skeletal application by the parties, the convicting court, or this Court. The application that was untimely filed has been treated by all participants as the original application to which the statutory requirements applied.

■ Late filing is permitted only if the claims could not have been presented timely or if there was a violation of the United States Constitution, but for which the applicant would not have been found guilty or sentenced to death.[2] The application does not suggest either of these exceptions or any excuse for late filing. The statute says that in such circumstances "th[is] court *shall* issue an order dismissing the application as an abuse of the writ under this section." [3]

Two dissenting judges say that we do not have to obey this law. We write to respond to their statements.

■ Judge Baird wants us to do something that neither the convicting court nor the applicant has asked us to do: to entertain this application as an original matter, filed directly in this court. The short answer is that we may not employ such a procedure. "Article 11.071 now contains the *exclusive* procedures for the exercise of this Court's original habeas corpus jurisdiction in death penalty cases." *Ex parte Davis*, 947 S.W.2d 216, 221, 223 (Tex.Cr.App.1996) (opinion of McCormick, P.J.) (emphasis in original).[4]

Nothing more need be said of Judge Baird's opinion, but it is difficult to leave unremarked the assertion that the legislative intent behind Article 11.071 would be furthered by our entertaining a late-filed application in defiance of that statute.[5] The screamingly obvious intent of Article 11.071 is to speed up the habeas corpus procedures for capital cases, while retaining exceptions which permit late filings only for applicants who should not have been convicted or sentenced to death. This applicant is not such a person, nor does anyone contend that he is. The answer to Judge Baird's question, "[W]hy is the State allowed an *unlimited* time, upon request, to respond to a habeas

application?" [6] is, we suppose, the legislature's recognition that it need not impose time limits on the plaintiff who has no incentive to delay the execution of the judgment it obtained.

Judge Overstreet says that our action in obeying the statute by dismissing the application "borders on barbarism," and that we should do what he thinks is "fair" rather than what is lawful. *Post* at 614. Our oaths are to uphold the constitutions and laws of this country and state; they are not a commission to do what a majority of us think is fair. This law was passed by the legislature and approved by the governor, in accordance with our constitutional form of government. The law is clear: this court shall dismiss this application because it was filed late. If the law is barbarous, the legislature should repeal it or the governor should commute or pardon those who are subjected to it. In the meantime, we must follow it.

MANSFIELD, Judge, concurring.

Texas Code of Criminal Procedure article 11.071; § 4(a), requires that an application for writ of habeas corpus "must be filed in the convicting court no later than the 180th day after the date the court of criminal appeals appoints counsel under Section 2...." We have interpreted § 4(f) to allow the convicting court to grant a 90–day extension for filing of the application, meaning, in effect, counsel has 270 days from the date of appointment to file the application. Section 4(g) clearly provides that failure to comply with the deadlines for filing the application described above constitutes a waiver of all grounds for relief available to the applicant had his application been filed in a timely manner.[1]

In the present case, applicant's counsel did not file the application within the initial 180–

---

2. See Tex.Code Crim. Pro. art. 11.071, § 5(a).

3. *Id.*, § 5(c) (emphasis added).

4. Although Presiding Judge McCormick's opinion is labeled a concurring opinion, it was joined by a majority of the Court and may be regarded as an opinion for the Court. Since 1997 we have instituted internal procedures to prevent such

misleading labels from being attached to opinions.

5. See *post* at 614.

6. *Post* at 615.

1. Certain claims are not barred by failure to file timely one's application as set forth in Texas Code of Criminal Procedure article 11.071, § 5(a).

day filing period nor within the 90–day extension period. After expiration of the 90–day extension, counsel received an additional extension of 30 days from the convicting court, though this extension is not authorized by the statute. Counsel did not file the application during that unauthorized 30–day extension. Finally, 9 days later, counsel filed the application—39 days late.

I agree that it would be unfair to dismiss applicant's application as having been untimely filed had counsel filed it within the 30–day unauthorized extension granted by the convicting court. Reliance upon the court order granting that extension was not unreasonable and establishes good cause for the first 30 days of the violation of the filing deadline. Given this is a capital case and dismissal of an application for habeas relief as having been untimely filed potentially has life or death consequences, it would be an injustice to punish applicant for, in effect, relying in good faith on a court order giving counsel additional time to file what, in all likelihood, is his one application for state habeas relief.

However, nothing in the record justifies or excuses the additional 9–day delay in the filing of this application. Given the utter absence of good cause for this additional delay, this Court cannot simply ignore the Legislature's determination that applications for habeas corpus relief under Article 11.071 must be filed within specified time deadlines. As post-conviction habeas corpus is a statutorily-based form of relief,[2] it is our task to follow the law as set forth by the Legislature, and we are not free to substitute our own personal beliefs/feelings as to what is fair given the Legislature's clearly-expressed intent.

With these comments, I join the opinion of the Court.

BAIRD, Judge, dissenting.

The prior dissenting opinion is withdrawn.

This is a post-conviction application for writ of habeas corpus filed pursuant to Tex. Code Crim. Proc. Ann. art. 11.071. Appli-

cant is represented by counsel appointed by this Court. The instant application presents twenty claims for relief which allege serious constitutional violations. However, the majority dismisses the application because counsel did not file the application timely. *Id.*, at § 5. Believing the majority willfully violates the intent of article 11.071 in dismissing the application through no fault of the condemned inmate, I dissent.

**I.**

In *Ex Parte Torres*, 943 S.W.2d 469, 473–74 (Tex.Cr.App.1997), we considered the legislative debates in both the House and the Senate to determine the legislative intent for enacting article 11.071. In *Torres*, we restated the debates as follows:

> . . . Representative Gallego, the House sponsor of the bill, emphasized the intent to limit a convicted person to "one bite at the apple":
>
>> And we tell individuals that, everything that you can possibly raise the first time, we expect you to raise it initially, one bite of the apple, one shot. . . . [Answering questions]. I think we'll have less filed, because what we're attempting to do here is to say, raise everything at one time. You get one bite of the apple. If you have to stick the kitchen sink in there, put it all in there. *And, we will go through those claims, one at a time, and make a decision,* but none of this, one—one—every week you file a new petition which is currently basically what happens.
>
> House floor, S.B.440, May 18, 1995, Tape 166, Side A (ellipsis and bracketed material inserted). *While the Legislature limited applicants to one bite of the apple, they clearly contemplated that that bite would be a full one. The recognized corollary to requiring an applicant to raise all of his claims at once is that every claim raised in that initial proceeding would be considered and decided.*[1]

Therefore, the intent of the legislature in enacting article 11.071 is clear, to provide

---

**2.** See *Ex parte Davis,* 947 S.W.2d 216, 221–223 (Tex.Crim.App.1996).

**1.** All emphasis supplied unless otherwise indicated.

each applicant with one full "bite at the apple."

## II.

Under section 5 of article 11.071, the instant application may be dismissed as untimely filed. However, when the application was untimely filed by counsel appointed by this Court, we should invoke our original jurisdiction. Texas Constitution, Art. V, Sec. 5, provides:

> Subject to such regulations as may be prescribed by law, the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and, in criminal law matters, the writs of mandamus, procedendo, prohibition, and certiorari. The Court and the Judges thereof shall have the power to issue such other writs as may be necessary to protect its jurisdiction or enforce its judgments. The Court shall have the power upon affidavit or otherwise to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction.

As I pointed out in my dissent in *Ex Parte Davis*, 947 S.W.2d 216, 232 (Tex.Cr.App. 1996): "The legislative history demonstrates the purpose of the amendment was to provide this Court with *greater* power to grant extraordinary writs in criminal cases." (emphasis in the original). Case law supports this interpretation of Art. V, Sec. 5 of our Constitution. *See, Ex Parte Renier*, 734 S.W.2d 349 (Tex.Cr.App.1987), and *State ex rel. Holmes v. Honorable Court of Appeals for the Third District*, 885 S.W.2d 389, 399 (Tex.Cr.App.1994). Nevertheless, five members of this Court, in an opinion authored by

Judge McCormick, concluded that the legislature, by using the word "original" in Section 4(a), intended for article 11.071 to be the "*exclusive* procedure[ ] for the exercise of this Court's original habeas corpus jurisdiction under Article 5, Section 5 of the Texas Constitution," *Davis*, 947 S.W.2d at 222.

Today's majority concludes that interpretation of the statute was correct and that we do not have original jurisdiction to reach the merits of the instant application. However, the majority ignores the fact that following *Davis*, the legislature amended article 11.071 and replaced the word "original" with the word "initial." This was done to make it clear that article 11.071 was not intended to affect this Court's original jurisdiction under Article V, Section 5 of the Texas Constitution.[2] Therefore, we do have original jurisdiction to reach the merits of the instant application, should we so choose to exercise it.

## III.

The majority believes "[t]he screamingly obvious intent of Article 11.071 is to speed up the habeas corpus procedures for capital cases ..." *Ante*, at 611. Therefore, the majority concludes speed should be our only concern when interpreting the statute. However, I believe the majority works from a faulty premise. If speed was the "screamingly obvious intent" of the Legislature when enacting the statute, why is the State allowed an *unlimited* time, upon request, to respond to a habeas application? *See* Tex.Code Crim. Proc. Ann. art. 11.071 § 7(a).[3]

**2.** In *Marin v. State*, 891 S.W.2d 267, 271–272 (Tex.Cr.App.1994), we recognized that:
When the Legislature meets, after a particular statute has been judicially construed, without changing that statute, we presume the Legislature intended the same construction should continue to be applied to that statute. *Lewis v. State*, 58 Tex.Crim. 351, 127 S.W. 808, 812 (App.1910). Additionally, the Code Construction Act provides: "when examining amendments to existing legislation to determine legislative intent, it is presumed that the legislature was aware of case law affecting or relating to the statute." Tex.Gov't Code Ann. Sec. 311.023(3); and, *Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex.Cr.App.1992).

Certainly, the converse is true: When the Legislature meets, after a particular statute has been judicially construed, and the Legislature changes that statute, we presume the Legislature intended to alter the construction previously applied to that statute.

**3.** In the instant case, the State requested and received an additional 221 days to respond to applicant's writ. However, today the majority rejects the instant application without ever receiving the *required* response from the State.

In similar cases arising out of Harris County, the State is routinely granted one year to respond to the writ application.

I believe the "screamingly obvious" intent of article 11.071 was to provide *competent counsel.* This belief is based upon the literal text of article 11.071 § 2(a), which provides: "An applicant *shall* be represented by competent counsel unless the applicant has elected to proceed pro se ..."[4] Indeed, to date, the Legislature has appropriated approximately $6,000,000.00 for the compensation of counsel.[5] The undeniable outcome of condemned inmates receiving competent counsel is an expedited habeas process.

## IV.

Today, a majority of the Court chooses which sections of article 11.071 will be strictly adhered to and which will be loosely construed.[6] The majority dismisses the instant application as untimely filed, piously contending the law must be followed.[7] In so doing, the majority wholly ignores that *WE* failed in our duty to appoint competent counsel. By choosing this selective construction of the statute, the majority willfully violates the intent of article 11.071. Applicant has not had his "one bite at the apple" through no fault of his own. Indeed, the fault lies with this Court by appointing less than competent counsel.

The majority fails to accept our statutory responsibility for appointing competent coun-

sel. Because we refuse to correct an appointment of less than competent counsel by invoking our original jurisdiction to reach the merits of the instant application, I dissent.

OVERSTREET, J., joins.

OVERSTREET, Judge, dissenting.

Today the majority gives a new meaning to the lady with a blindfold holding the scales of justice, as it dispatches three indigent death row inmates toward the execution chamber without meaningful review of their habeas claims. *Ex parte Laroyce Lathair Smith,* 977 S.W.2d 610 (Tex.Cr.App.1998), *Ex parte Roberto Moreno Ramos,* 977 S.W.2d 616 (Tex.Cr.App.1998), and *Ex parte Paul Richard Colella,* 977 S.W.2d 621 (Tex.Cr.App. 1998), *Smith* by written opinion, *Ramos* and *Colella* by written orders. My previous dissent in *Smith* is withdrawn and replaced with this dissenting opinion.

To dismiss *Smith* and *Colella* as abuse of writ because their lawyers untimely filed writ applications borders on barbarism because such action punishes the applicant for his lawyer's tardiness. It would be fair to punish the attorney by not providing payment. It would also be fair to the applicant, and serve the concept of justice better, to appoint

4. The majority alleges applicant's counsel disregarded information from this Court's Executive Administrator regarding the time to file this writ. *Ante,* at 610. If this is true, then CLEARLY counsel was incompetent and her continued representation of applicant violated Tex.Code Crim. Proc. Ann. art. 11.071, § 2(a). Why the majority fails to acknowledge the screamingly obvious truth that applicant did not receive the statutorily mandated assistance of *competent* counsel is frustrating, especially when it appears our staff was on notice regarding counsel's failings.

5. Counsel in the instant case has been paid in excess of $6,000.00.

6. The majority emphasizes in italics the "shall" when citing the statute requiring dismissal of untimely applications. *Ante,* at 611. Not once does the majority even mention the requirement that this Court "shall" appoint competent counsel. No citation, no italics, no consideration whatsoever. Perhaps Judge Womack can cite me to a case which determines which "shall" shall be followed.

Judge Womack also chastises the dissenters stating "[o]ur oaths are to uphold the constitutions and laws of this country and state." *Ante,* at 611. His implication being that because the dissenters believe *all* the laws must be followed, including the appointment of competent counsel, we are somehow not following our oaths. I resent his intimations, and I continue to believe that each section of Tex.Code Crim. Proc. Ann. art. 11.071 is equally valid and should have its intended effect.

7. In addition, the majority astounds me when they state the statutory exceptions for late filings are "only for applicants who should not have been convicted or sentenced to death. This applicant is not such a person, nor does anyone contend that he is." *Ante,* at 611. Even a cursory review of the instant application makes it "screamingly obvious" that applicant *does contend* he should not have been convicted or sentenced to death. In fact, applicant alleges twenty reasons why he should not have been convicted or sentenced to death. For the majority to so blatantly misrepresent these facts is not only disingenuous but downright disturbing.

a new lawyer and reinitiate the timetable. Must the indigent Texas Death Row inmate suffer the ultimate punishment of death without benefit of State habeas review because of his lawyer's tardiness? A majority of this Court says "yes," but I say "no," even if I stand alone. I shall address all three of these cases together.

One common thread in all three cases is that applicants are indigent death row inmates who requested the appointment of a lawyer, this Court appointed lawyers to represent them, and all three lawyers filed applications after the 90th day, which is clearly outside of the time limit set out in the statute, Article 11.071, V.A.C.C.P. *Smith* is dismissed as not timely filed because of a 9–day delay. *Colella* is dismissed as not timely filed because of a 37–day delay. *Ramos* is denied on the merits even though there is a 2–day delay in filing, with such delay being excused on Texas Constitutional grounds of due course of law because the lawyer relied on incorrect instructions from the trial court instead of reading and understanding the law himself. Apparently in some situations, death row inmates are due a little more due course of law than in others.

In *Smith*, Judge Womack is critical of me because I speak and write of being fair. He also pays lip service to "[o]ur oaths are to uphold the constitutions and laws.... The law is clear: this court shall dismiss this application because it was filed late." *Smith, supra*, 977 S.W.2d at 611. My question of Judge Womack can be answered "yes" or "no"—Was the application in *Ramos* filed late? The answer leaps out as "yes." The Judge who said the law is clear now deviates. At least Judge Keller, even though I disagree with her position, has the courage to interpret the law the same way each time. The Court seems unwilling to effectuate the entire will of the Legislature when it enacted Article 11.071. It goes without saying that the Legislature wanted to speed up the process and add finality to the disposition of death penalty cases. However, I do not believe that the Legislature intended to throw the Constitution on its head and fairness out the door. The majority also seems unwilling to take into consideration how its disposition of these applications affects the ability of the death row inmates to seek federal review. Apparently, pursuant to federal law, including The Anti–Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2261 et seq., death penalty applicants who seek federal habeas review are subject to procedural default holdings if they do not properly pursue their claims to a resolution before this Court. *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

If a lawyer's actions deny an indigent death row applicant meaningful review of his claims, then I question whether the inmate standing in line to be executed has received effective assistance of counsel. Commonsense tells me that if you do not have effective assistance of counsel, with all due respect, I consider that worse than having no lawyer at all because having an ineffective lawyer gives a sense of legitimacy to the proceeding, yet the degree of assistance may be equivalent to not having a lawyer at all.

The only thing consistent about the majority's disposition of these cases is its inconsistency, the apparent need to justify its disposition in the cases without regard to the legislative intent of the statute and/or fairness, and a reckless disregard of the law based on its own stare decisis. Without a doubt, *Smith* and *Colella* are being treated differently than *Ramos*. Therein lies the criticism of death penalty litigation. Some are being treated differently than others, and today the Court clearly throws gasoline on the fire.

For these reasons, I dissent to the disparate treatment of the indigent death row inmates of Texas and specifically to the disposition of *Smith* and *Colella*. I concur only in the decision to deny relief in *Ramos*.