IN THE COURT OF CRIMINAL APPEALS

OF TEXAS





NO. AP-76,665





Ex parte ADRIAN CHAVEZ, Applicant





ON APPLICATION FOR A WRIT OF HABEAS CORPUS

HARRIS COUNTY






Keller, P.J., filed a dissenting opinion.





 I agree with the Court and with Judge Price that applicant's claim must fail. I dissent because
I believe that the claim should be dismissed rather than denied on the merits. I also write separately 
to review the differences in the ways that we treat claims, depending on whether testimony is
perjured or merely false, and whether the State knew or did not know of that fact.

A. Procedural Question: Dismiss or Deny?


 Under § 4, we cannot consider the merits of a subsequent habeas application unless one of
two exceptions is satisfied. (1) The Court holds that applicant has satisfied the "unavailability"
exception found in § 4(a)(1) because our decision in Ex parte Chabot (2) constitutes a new legal basis
that did not exist when applicant's first habeas application was filed. I cannot agree.

 For a "new legal basis" to satisfy the statutory unavailability exception, it must be true that
"the current claims and issues have not been and could not have been presented previously in an
original application . . . filed under this article because the . . . legal basis for the claim was
unavailable on the date the applicant filed the previous application." (3) Applicant's claim fails under
both the "have not been" and the "could not have been" aspects of the unavailability exception.

 The legislature has specifically defined what constitutes an "unavailable" legal basis:

For purposes of Subsection (a)(1), a legal basis of a claim is unavailable on or before
a date described by Subsection (a)(1) if the legal basis was not recognized by and
could not have been reasonably formulated from a final decision of the United States
Supreme Court, a court of appeals of the United States, or a court of appellate
jurisdiction of this state on or before that date. (4)


The statute is not satisfied by the mere fact that we have never recognized the legal basis in question.
Habeas applicants are responsible for knowing, not only about decisions from this Court and the
United States Supreme Court, but also about the decisions of the Texas Supreme Court, Texas courts
of appeals, and United States courts of appeals. If any of those courts have recognized the legal
basis, or issued a decision from which the legal basis could have been reasonably formulated, then
the unavailability exception is not met. (5) 

 Sanders v. Sullivan is a case from a United States court of appeals that is not exactly on point,
but I believe that applicant's claim could reasonably have been formulated from it. (6) In that case, the
Second Circuit recognized that a due-process violation could be shown through the State's
unknowing use of perjured testimony:

In our view however, it is indeed another matter when a credible recantation of the
testimony in question would most likely change the outcome of the trial and a state
leaves the conviction in place. In this case, we believe that allowing the conviction
to stand violates due process. (7)


* * *



There is no logical reason to limit a due process violation to state action defined as
prosecutorial knowledge of perjured testimony or even false testimony by witnesses
with some affiliation with a government agency. Such a rule elevates form over
substance. It has long been axiomatic that due process requires us "to observe that
fundamental fairness essential to the very concept of justice." It is simply intolerable
in our view that under no circumstance will due process be violated if a state allows
an innocent person to remain incarcerated on the basis of lies. (8) 


 Sanders was concerned with perjured testimony. It did not hold that the State's unknowing
use of false, but not perjured, testimony could violate due process. But neither did Chabot, which
also involved only perjured testimony, and which applicant relies on today as a "new legal basis." (9) 
Chabot was decided after applicant's first habeas application, but Sanders was decided before it. 
If, before his first application, applicant could have reasonably formulated a claim that due process
could be violated by the State's unknowing use of false (not perjured) testimony, he fails to establish
a new legal basis for his claim. (10) I believe that applicant could have formulated this claim from
Sanders. And this belief is vindicated by the fact that he actually did formulate it: he raised it in his
first application. 

 This brings us to the reason applicant's claim fails the other aspect of the unavailability
exception: he has actually already presented the claim. The unavailability exception is met only by
claims that "have not been and could not have been presented previously." Because applicant
presented his claim previously, it does not fall within the unavailability exception. 

 By raising his claim in his original application, applicant gains an advantage compared to the
litigant who fails to do so: there is always the possibility that this Court will reconsider a previous
application. (11) Although reconsideration should be a rare event, (12) it ought to be available for a false-testimony claim that has been diligently pursued and would be meritorious under the Court's current
standards. (13) I agree, however, for the reasons given by the Court, that applicant cannot establish
materiality, so a reconsideration of the previous application is not warranted. 

 It is worth pointing out that applicant essentially receives a merits review of his claim in all
three of the opinions issued in this case: from the Court in denying his application, from Judge Price
in concluding that applicant fails to satisfy § 4, and from me in concluding that reconsideration of
applicant's original application is not warranted. But how that review occurs is important because
what this Court says here may impact future cases. (14) We should not suggest that applicants who
have failed to diligently pursue false-testimony claims have satisfied the legislative scheme set out
in § 4. The legislature made habeas applicants responsible for what happens in the federal appellate
courts, not only for express holdings, but for legal theories that could be reasonably formulated from
those holdings. We must give effect to the statute as it is written. (15)

B. False-Testimony Jurisprudence


 The general harm standard on habeas is that an applicant will be granted relief if he can show,
by a preponderance of the evidence, that the error or misconduct affected the outcome of the
proceedings. (16) It is perhaps time to recognize that the application of the general harm standard on
habeas corpus will be an exceedingly rare event. 

 I have not found a case since Fierro in which the preponderance standard has been applied. 
It has become apparent from our caselaw that the habeas harm standard applies only to claims that
could have been raised in an earlier proceeding. (17) The preponderance standard does not apply, for
example, to ineffective-assistance-of-counsel claims, which usually cannot be raised before habeas. 
And the preponderance standard does not apply to a claim about the knowing use of perjury when
the defendant had no opportunity before habeas to discover and challenge the perjury. (18) Applicants
like these, who are not responsible for failing to raise their claims earlier, are generally allowed a
more favorable harm standard than the preponderance standard. 

 In his dissent in Fierro, Judge Clinton anticipated the main reason the general habeas harm
standard rarely comes into play--the narrowing of the cognizability of claims to exclude most claims
that could have been raised in an earlier proceeding. (19) We now almost universally apply the rule that
a claim is not cognizable on habeas corpus if it could have been raised at trial or on direct appeal. (20) 
The upshot is that the general habeas harm standard applies only to a claim that could have been
raised earlier, but if a claim could have been raised earlier, then it is most likely not cognizable
anyway. (21) 

 The knowing use of perjured or false testimony is a rare exception to the rule against
considering claims on habeas that could have been raised earlier. It is appropriate to make this
exception because of the egregiousness of the State's conduct. When the State knowingly subverts
the system, a defendant's negligence in failing to assert a claim should not by itself end the analysis. 
Instead, a belated claim of this sort is subject to the general habeas harm standard. (22) 

 But some confusion has arisen in our perjury/false-testimony jurisprudence because of the
failure to properly distinguish the harm and materiality analyses. Chabot involved the unknowing
use of perjured testimony. In that case, we applied the preponderance standard to determine that
relief was warranted. We characterized our application of the preponderance standard as a standard
of harm, (23) but it was not: Chabot could not have raised his claim earlier, (24) so the general habeas harm
standard did not apply. (25) What we actually did was perform a materiality analysis. As it happens,
the materiality standard for the unknowing use of perjured testimony is the same as the general
habeas harm standard. (26) Though it appeared that we were simply applying the preponderance
standard, we were in fact analyzing the perjured testimony for materiality.

 That leaves at least two unanswered questions regarding claims about the unknowing use of
false testimony. The first is whether a defendant may raise such a claim for the first time on habeas
if he had an opportunity to raise the claim at a prior proceeding. I submit that when the State's use
of perjured or false testimony is unknowing, a defendant may not raise his claim for the first time
on habeas if he could have raised it at trial or on direct appeal. It is only the State's mendacity in the
"knowing use" scenario that impels us to make an exception to the general rule against the
cognizability of claims that could have been raised earlier.

 The second unanswered question is whether the materiality standard that applies to the
unknowing use of perjured testimony should also apply to the unknowing use of testimony that is
merely false. We do not distinguish between perjured and false testimony in the "knowing use"
context because the materiality standard depends upon the culpability of the state actor that uses the
testimony, and a state actor who knowingly uses false testimony is just as culpable as one who
knowingly uses perjured testimony. But in the "unknowing use" context, the culpability of the state
actor is not the main issue, if it is an issue at all. When the testimony is perjured, a non-state actor
has knowingly subverted the system, but when the testimony is merely false, the relevant actors may
have been merely negligent or have no culpability at all. All we can say with certainty is that the
showing of materiality for the unknowing use of testimony that is merely false must be at least as
strong as the showing required for the unknowing use of perjured testimony, (27) but it is possible that,
when perjury is absent, an even stronger showing is required.

 Regardless of the answer to that second question, our cases have resulted in a "materiality
ladder" in which claims can be arranged in order of how favorable the standard of materiality is to
the defendant. Claims regarding the State's knowing use of perjured or false testimony occupy one
end of the ladder with the most favorable standard of materiality--a reasonable possibility that the
outcome would be different (not harmless beyond a reasonable doubt). (28) Claims regarding newly
discovered evidence that demonstrates a convicted person's innocence occupy the other end of the
ladder, with the least favorable standard of materiality--clear and convincing evidence that no
reasonable juror would have convicted the defendant in light of the new evidence. (29) The unknowing
use of perjured or false testimony falls in between those endpoints, with a mid-level standard (or
standards) of materiality. (30) 

 For these reasons, I disagree with some statements in the Court's opinion that suggest that
the materiality standard for the "unknowing" use of false testimony is the "reasonable possibility"
standard associated with "knowing" use. The materiality standards for knowing and unknowing use
are in fact distinct. The following chart summarizes the main differences between the various types
of claims that can involve perjured or false testimony:



The Situation

Materiality Standard






Compared to 


Habeas 


Harm Standard

Forfeit if claim
could have been
but was not
raised at trial
or on direct
appeal?
State's knowing use of
perjured or false
testimony
Reasonable possibility
that the outcome would
have been different (not
harmless beyond a
reasonable doubt)
(Bagley)
Substantially more
favorable to the
defendant than the
habeas harm
standard
No, but if raised
late, habeas
harm standard
applies
Ineffective assistance of
counsel (for failing to
discover or expose
perjured or false
testimony)
Reasonable probability
that outcome would have
been different (Strickland)
Slightly more
favorable to the
defendant than the
habeas harm
standard
Yes (but rare
that claim could
have been raised
earlier)
State's unknowing use
of perjured testimony
Preponderance of the
evidence (more likely
than not) that the outcome
would have been different
(Chabot)
Same as the
habeas harm
standard
Yes
State's unknowing use
of false (but not
perjured) testimony 
At least preponderance
but possibly heavier
burden



 
At least as onerous
to the defendant as
the habeas harm
standard but
possibly more
onerous
Yes
Newly discovered or
newly available
evidence that establishes
the defendant's actual
innocence
Clear and convincing
evidence that no rational
juror could find the
defendant guilty beyond a
reasonable doubt
(Elizondo) 
Substantially more
onerous to the
defendant than the
habeas harm
standard
Yes, if the
evidence would
not qualify as
"newly
discovered" or
"newly
available"



 With these comments, I agree with the Court's conclusion that applicant's claim must fail. 
Because I would dismiss the application, rather than deny it, I respectfully dissent.


Filed: May 23, 2012

Publish
1. Tex. Code Crim. Proc. art. 11.07, § 4(a).
2. 300 S.W.3d 768 (Tex. Crim. App. 2009).
3. Art. 11.07, § 4(a)(1).
4. Id., § 4(b) (emphasis added).
5. See also Ex parte Hood, 211 S.W.3d 767, 775 (Tex. Crim. App. 2007), disposition changed
on reh'g, 304 S.W.3d 397 (Tex. Crim. App. 2010). The statute does not make habeas applicants
responsible for knowing the decision of state appellate courts from other states, e.g. the Supreme
Court of California. 
6. 863 F.2d 218 (2d Cir. 1988).
7. Id. at 222 (citations omitted).
8. Id. at 224 (citation omitted).
9. See Chabot, 300 S.W.3d at 772 ("[W]e agree with the convicting court that the
circumstances of the present case merit a finding that the applicant's due-process rights were
violated, notwithstanding the absence of the State's knowledge of the perjured testimony at the time
of trial.").
10. See Ex parte Fontenot, 3 S.W.3d 32 (Tex. Crim. App. 1999) (Even though cases of Ex
parte Jarrett, 891 S.W.2d 935 (Tex. Crim. App.1994), and Ex parte Wilson, 956 S.W.2d 25 (Tex.
Crim. App.1997), recognizing an ineffective-assistance claim arising out counsel's failure to tell a
defendant of his right to file a PDR on his own, had not yet been decided when applicant's initial
application was filed, the claim could have been reasonably formulated from statement in Ayala v.
State, 633 S.W.2d 526 (Tex.Crim.App.1982), that an ineffective-assistance claim could arise if the
defendant was deprived of the right to file a PDR because counsel volunteered to file one but failed
to do so.).
11. A motion for rehearing from an order denying relief in an Article 11.07 habeas proceeding
is not allowed, but we may reconsider the case on our own initiative. Tex. R. App. P. 79.2(d); see
also Ex parte Moreno, 245 S.W.3d 419, 427-29 (Tex. Crim. App. 2008). 
12. See Moreno, 245 S.W.3d at 427-29; see also id. at 431-32 (Keller, P.J., concurring). 
13. Id. at 429 (reconsideration warranted, in part, because defendant had not "slumbered on
his rights").
14. See Ex parte Hood, 304 S.W.3d 397, 409 (Tex. Crim. App. 2010) (subsequent writ
holding guided by desire to treat the applicant the same as similarly situated applicants in prior
cases).
15. Ex parte Smith, 977 S.W.2d 610, 611 (Tex. Crim. App. 1998).
16. Ex parte Dutchover, 779 S.W.2d 76, 78 (Tex. Crim. App. 1989); Ex parte Fierro, 934
S.W.2d 370, 372 (Tex. Crim. App. 1996).
17. See Ex parte Ghahremani, 332 S.W.3d 470, 481-83 (Tex. Crim. App. 2011); Fierro,
934 S.W.2d at 374 n. 10.
18. Ghahremani, 332 S.W.3d at 481-83.
19. See Fierro, 934 S.W.2d at 378 (Clinton, J., dissenting) (would limit cognizability of
habeas review to claims that are "so fundamental to the fair operation of the system as to be 1)
immune from procedural default, 2) not subject to a harm analysis, and 3) fully retroactive in
application" and to those federal constitutional claims "recognized as of the time of trial but for
which a record could not have been made, despite due diligence of the accused, in time to preserve
the error for direct appeal").
20. Ex parte Jimenez, 2012 Tex. Crim. App. LEXIS 637, at 34-35 (April 25, 2012)
("Ordinarily a convicted person may not raise an issue in a habeas proceeding if the applicant could
have raised that issue on direct appeal."); Ex parte Richardson, 201 S.W.3d 712, 713 (Tex. Crim.
App. 2006) ("Nevertheless, the trend of this Court has been to draw stricter boundaries regarding
what claims may be advanced on habeas. We have often stated that 'the Great Writ should not be
used' to litigate matters 'which should have been raised on appeal' or at trial, and while we have not
always consistently followed this maxim in the past, in recent years we have more closely adhered
to it.").
21. In most cases, the failure to raise a claim that could have been raised earlier can be made
a part of an ineffective-assistance-of-counsel claim. The prejudice standard for ineffective-assistance
claims--a reasonable probability that the result of the proceeding would have been different--is
slightly more favorable to the defendant than the general habeas harm standard. See Harrington v.
Richter, 131 S. Ct. 770, 792 (2011); Strickland v. Washington, 466 U.S. 668, 694 (1984). But there
will be rare cases in which an ineffective-assistance claim will be unavailable because the defendant
represented himself at trial or on appeal.
22. See Fierro, passim.
23. 300 S.W.3d at 771.
24. See id. at 770 ("The applicant did not raise this due-process claim in his first application
for habeas relief. Nor could he have brought the claim.").
25. See Ghahremani, 332 S.W.3d at 481-83.
26. See Ex parte Napper, 322 S.W.3d 202, 242 (Tex. Crim. App. 2010) ("Chabot does not
appear to have taken into account the caveat in Fierro, and so Chabot simply stands for the
proposition that the preponderance of the evidence standard is appropriate for the unknowing use
of perjured testimony that the habeas applicant had no prior opportunity to discover."). 
27. Id. at 244.
28. United States v. Bagley, 473 U.S. 667, 678-80, 679 n.9 (1985). 
29. Ex parte Elizondo, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996).
30. Although Elizondo was decided as an actual innocence case, it would also have satisfied
the predicate, under today's standards, for an unknowing-use-of-perjured-testimony claim because
the recantation of a testifying witness was at issue. See id. at 204 ("[L]ast year, the witness whose
testimony was mainly responsible for convicting applicant recanted.").