

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-95,689-01

### IN RE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Relator

### ON MOTION FOR LEAVE TO FILE PETITION FOR WRIT OF MANDAMUS
### AND PETITION FOR WRIT OF MANDAMUS
### IN CAUSE NO. 69441
### IN THE 34TH JUDICIAL DISTRICT COURT
### EL PASO COUNTY

PARKER, J., delivered the opinion of the Court in which SCHENCK, P.J., and RICHARDSON, YEARY, NEWELL, KEEL, McCLURE, and FINLEY, JJ., joined. WALKER, J., filed a concurring and dissenting opinion.

### <u>OPINION</u>

The real party in interest, Tony Egbuna Ford, was convicted of capital murder and sentenced to death. The trial court ordered El Paso County to pay for the collection and testing of a blood sample from Ford (the "Funding Order") and ordered The Texas Department of Criminal Justice (TDCJ) to provide access to Ford for the purpose of obtaining a blood sample (the "Access Order"). TDCJ now seeks mandamus relief from both orders. We conclude that TDCJ does not have standing

to challenge the Funding Order. But we conclude that TDCJ is entitled to mandamus relief on the Access Order. The defendant's conviction is final, his first habeas application has been disposed of, there is no pending proceeding before the trial court, and no statute otherwise confers authority on the trial court to issue the order in question. Under that procedural posture, there is nothing to confer jurisdiction on the trial court to issue the Access Order. And because that lack of jurisdiction is indisputable, mandamus relief is warranted.

## I. BACKGROUND

Ford was convicted of capital murder and sentenced to death in July 1993. His conviction was affirmed on appeal, his first habeas application was denied, and two subsequent habeas applications were later dismissed. On March 27, 2024, with no habeas proceeding pending, Ford filed in the convicting court a "Defense Motion for Funding for Genetic Testing." He alleged that if he could obtain a specific kind of genetic testing, he could prove that he did not personally shoot the victim in the underlying capital murder case. He explained that he had already found a doctor and lab willing to take a blood sample and conduct the testing but needed funding to pay for the testing. That same day, the trial court (Judge William E. Moody of the 34th Judicial District Court of El Paso County) entered an order directing:

> [1] El Paso County [to] pay to [Ford's doctor] . . . the amount of $3600.00 for the collection and assessment of a blood sample from Mr. Ford for [genetic testing], [and]

> [2] [T]he warden of the Polunsky Unit-TDCJ [to] allow access to Mr. Ford . . . by personnel from Dr. Luna's office for the purpose of drawing the necessary blood sample for this testing.

In this opinion, we refer to the first item as the "Funding Order" and to the second item as the "Access Order." TDCJ challenges both items. We grant leave to file and now address TDCJ's

contentions.

## II. ANALYSIS

### A. Funding Order - Justiciability

Like any claimant seeking relief, a relator seeking mandamus relief must demonstrate a justiciable interest in the underlying controversy.[1] "[O]nly the person whose primary legal right has been breached may seek redress for an injury."[2] And "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."[3]

TDCJ has not demonstrated that the Funding Order breaches any legal right it possesses. The Funding Order is expressly directed to "El Paso County," and TDCJ does not allege, much less prove, any interest in El Paso County's finances.

TDCJ argues that the Access Order is "contingent upon" the Funding Order because "[n]egating the funding will . . . alleviate the need for the problematic access that is the injury." We take TDCJ's assertion to mean that, without funding, Ford would not be able to take advantage of any access that TDCJ might be required to provide. Even assuming that to be so, TDCJ is still a third party with respect to the Funding Order. Third-party standing requires at least two additional

---

[1] *Terrazas v. Ramirez*, 829 S.W.2d 712, 723 (Tex. 1991); *see also In re City of Lubbock*, 666 S.W.3d 546, 551 n.18 (Tex. Crim. App. 2023) (quoting *Terrazas*). TDCJ correctly notes that this Court looks to Texas civil courts for its standing jurisprudence, and civil courts have adopted the federal test. *See Fuller v. State*, 829 S.W.2d 191, 201-02 (Tex. Crim. App. 1992) ("In Texas, the law of standing has been developed mainly in the courts of civil jurisdiction."); *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) ("The Texas standing requirements parallel the federal test for Article III standing.").

[2] *Fuller*, *supra* at 201 (quoting *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976)).

[3] *TransUnion v. Ramirez*, 594 U.S. 413, 431 (2021).

showings: (1) that the party asserting the right has a "close" relationship with the one who possesses the right, and (2) that there is a "hindrance" to the possessor's ability to protect its own interests.[4] Even if we assume that TDCJ has a close relationship with El Paso County because they are both governmental entities under the authority of the State of Texas, nothing hinders El Paso County from seeking mandamus relief to protect its own interests. Consequently, we decline to entertain TDCJ's challenge to the Funding Order.

### B. Access Order - Mandamus

To obtain mandamus relief, a relator must show (1) the absence of an adequate remedy at law, and (2) that the act the relator seeks to compel is "ministerial."[5] No one disputes that TDCJ meets the first mandamus prong, so the issue before us is whether TDCJ has shown a ministerial duty with respect to the Access Order. "If a trial judge lacks authority or jurisdiction to take particular action, the judge has a 'ministerial' duty to refrain from taking that action, to reject or overrule requests that he take such action, and to undo the action if he has already taken it."[6] Although "mandamus will not lie to resolve a hotly contested unsettled question of law,"[7] mandamus relief can be available in an issue of first impression "when the factual scenario has never

---

[4] *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).

[5] *State ex rel. Ogg*, 692 S.W.3d 481, 484 (Tex. Crim. App. 2024).

[6] *In re Medina*, 475 S.W.3d 291, 298 (Tex. Crim. App. 2015) (quoting 43B GEORGE E. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 61.29 (3d ed. 2011)).

[7] *In re Smith*, 665 S.W.3d 449, 454 (Tex. Crim. App. 2022).

been precisely addressed but the principle of law has been clearly established."[8]

A trial court has no "general" jurisdiction after a conviction becomes final.[9] Any jurisdiction a trial court obtains post-finality must be conferred by the Texas Constitution or by statute, and any provision bestowing post-finality jurisdiction defines the scope of that jurisdiction.[10]

Ford's conviction became final long ago—in 1996, when mandate issued after this Court affirmed the trial court's judgment.[11] The Texas Constitution grants a habeas remedy that is subject to legislative regulation, and for a death-penalty conviction, the legislature has decreed that habeas jurisdiction can be exercised after conviction under the procedures outlined in Article 11.071 of the

---

[8] *Medina*, 475 S.W.3d at 298 (quoting *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013)).

[9] *Ogg*, 692 S.W.3d at 484-85 ("It is well settled that a trial court must derive its jurisdiction from either the Texas Constitution or legislative enactments. When a conviction has been affirmed on appeal and mandate has issued, general jurisdiction is not restored in the trial court. A trial court can obtain postconviction jurisdiction over a matter statutorily—for example, to set an execution date, conduct DNA testing, or determine whether an inmate is competent to be executed. But the statutes bestowing jurisdiction over these matters also define the scope of that jurisdiction.") (citations omitted) (citing *Staley v. State*, 420 S.W.3d 785 (Tex. Crim. App. 2013); *Staley*, 420 S.W.3d at 795 (citing *State v. Patrick*, 86 S.W.3d 592 (Tex. Crim. App. 2002) (plurality op.)); *Patrick*, 86 S.W.3d at 594 ("When a conviction has been affirmed on appeal and the mandate has issued, general jurisdiction is not restored in the trial court. The trial court has special or limited jurisdiction to ensure that a higher court's mandate is carried out and to perform other functions specified by statute, such as finding facts in a habeas corpus setting, or as in this case, determining entitlement to DNA testing. The trial court did not cite a statutory provision, or any other source of authority, that would authorize the order for DNA testing, and we are unaware of any source of authority for this action. As we have previously observed, the order was based neither upon Chapter 64 nor upon a pending application for writ of habeas corpus. The trial court was therefore clearly and indisputably without jurisdiction to issue the order in question.").

[10] *Ogg*, *supra*; *Staley*, *supra*.

[11] *See Ford v. State*, 919 S.W.2d 107, 118 (Tex. Crim. App. 1996) (affirming the judgment and sentence).

Texas Code of Criminal Procedure.[12]  But this Court denied Ford's first habeas application,[13] dismissed his second habeas application without prejudice,[14] and dismissed his third habeas application as an abuse of the writ under 11.071, § 5.[15]  Ford has not filed a fourth habeas application and, so, no habeas proceeding is currently pending.  Nor is there pending any other recognized post-conviction proceeding—such as a request for DNA testing under Chapter 64.[16]  Nor has Ford filed a civil lawsuit (which might then afford him civil discovery mechanisms).[17]  And there is no statute that authorizes an order like the Access Order in the absence of a pending proceeding.  With no pending proceeding and no freestanding statutory authorization to issue an order such as this, the trial court indisputably lacked jurisdiction to issue the Access Order.  It is that simple.

Relying on *Johnson*,[18] Appellant argues that a trial court has inherent power to order discovery that it deems just before setting an execution date.  But that contention is plainly

---

[12]  TEX. CONST. art. I, § 12 ("The writ of Habeas Corpus is a writ of right, and shall never be suspended.  The Legislature shall enact laws to render the remedy speedy and effectual."); *Ex parte Smith*, 977 S.W.2d 610, 611 (Tex. Crim. App. 1998) ("Article 11.071 now contains the exclusive procedures for the exercise of this Court's original habeas corpus jurisdiction in death penalty cases.").

[13]  *Ex parte Ford*, No. WR-49,011-01 (Tex. Crim. App.  Sept. 12, 2001) (not designated for publication).

[14]  *Ex parte Ford*, No. WR-49,011-02, 2005 WL 3429243 (Tex. Crim. App. Dec. 14, 2005) (not designated for publication).

[15]  *Ex parte Ford*, No. WR-49,011-03, 2019 WL 4318695 (Tex. Crim. App. Sept. 11, 2019) (not designated for publication).

[16]  *See Ex parte White*, 506 S.W.3d 39, 51 (Tex. Crim. App. 2016) (observing that Chapter 64 establishes a post-finality remedy).

[17]  We need not, and do not, address whether a civil proceeding would be viable or would ultimately afford Ford a basis for discovery.

[18]  *State v. Johnson*, 821 S.W.2d 609 (Tex. Crim. App. 1991).

foreclosed by our cases. To the extent *Johnson* describes a trial court's inherent power as that which "aid[s] in the exercise of its jurisdiction, in the administration of justice, or in the preservation of its independence and integrity,"[19] later cases plainly require that those purposes be viewed in light of the limited jurisdictional environment the trial court operates in post-finality.[20] As discussed earlier, a trial court has no general jurisdiction when the conviction in that court becomes final,[21] and setting an execution date is an example of specific, limited jurisdiction that can be exercised only as provided by the statute conferring that limited jurisdiction.[22]

Nothing in the statute authorizing the trial court to set an execution date suggests that the trial court can initiate an investigation before doing so.[23] In fact, with one exception, the setting of an execution date can be impeded only by the pendency of a post-conviction proceeding, through either the actual filing of a habeas action or the submission of a Chapter 64 motion for DNA testing.[24] The one exception is that the setting of an execution date may be impeded by a determination that there

---

[19] *See id.* at 612.

[20] *See supra* at n.9.

[21] *See id.*

[22] *See Ogg*, 692 S.W.3d at 484-85 ("A trial court can obtain postconviction jurisdiction over a matter statutorily—for example, *to set an execution date*, conduct DNA testing, or determine whether an inmate is competent to be executed. *But the statutes bestowing jurisdiction over these matters also define the scope of that jurisdiction*.") (emphasis added).

[23] *See* TEX. CODE CRIM. PROC. art. 43.141, *passim*.

[24] *See id.* art. 43.141(a) (timely filing of initial habeas application prevents setting an execution date), (d) (execution date may be modified or withdrawn if trial court determines that proceedings are necessary on a subsequent or untimely filed habeas application or on a motion for DNA testing).

is good cause to file an untimely initial habeas application.[25] Even in that last situation, the execution-date statute clearly contemplates that any action other than setting or withdrawing an execution date will be pursuant to habeas authority.

We have recognized that a trial court sometimes has implicit authority to do an act that would carry out an explicit grant of jurisdiction or authority.[26] But implicit authority must arise "from specific grants of power."[27] For reasons already discussed, the power to set an execution date does not create a basis for ordering discovery.

Habeas jurisdiction is also a specific grant of power, but to become a basis for other acts, that jurisdiction must first be invoked. We remarked in *Holloway*: "As the plurality in *Patrick* explained, any acts undertaken under the guise of 'implicit authority' may be taken only in furtherance of some other action for which there is an explicit grant of jurisdiction."[28] And in talking about "some other action," *Patrick* was clearly referring to a proceeding that was *pending*—faulting the trial court in that case for issuing an order "based neither upon Chapter 64 *nor upon a pending application for writ of habeas corpus*."[29]

For non-capital habeas, invoking habeas jurisdiction requires the filing of a habeas

---

[25] *See id.* art. 43.141(b); *see also id.* art. 11.071, § 4A (good cause requirement for filing an untimely initial application).

[26] *State v. Holloway*, 360 S.W.3d 480, 488 (Tex. Crim. App. 2012); *Johnson*, 821 S.W.2d at 612.

[27] *Johnson*, 821 S.W.2d at 612.

[28] 360 S.W.3d at 488.

[29] 86 S.W.3d at 594 (emphasis added).

application.[30]  For capital habeas, it is arguable that habeas jurisdiction in an *initial* habeas proceeding begins when counsel is appointed.[31]  But Article 11.071's counsel-appointment and investigation provisions do not apply to *subsequent* habeas proceedings.[32]  In fact, Article 11.071 requires the clerk of the trial court to *immediately* send a copy of any filed subsequent capital habeas application to this Court and bars the trial court from acting on the subsequent application unless and until this Court has made a determination that the application satisfies an exception under Article 11.071, § 5, to the bar against subsequent applications.[33]  This statutory language unambiguously requires a determination by this Court that a § 5 exception has been met before a trial court can exercise jurisdiction over a subsequent capital habeas application.  And it is also indisputable that there is no jurisdiction by any court over a subsequent capital habeas application before the

---

[30]  *See* TEX. CODE CRIM. PROC. art. 11.07, § 3(b) ("An application for writ of habeas corpus filed after final conviction in a felony case, other than a case in which the death penalty is imposed, must be filed with the clerk of the court in which the conviction being challenged was obtained, and the clerk shall assign the application to that court. When the application is received by that court, a writ of habeas corpus, returnable to the Court of Criminal Appeals, shall issue by operation of law.").

[31]  *See id.* art. 11.071, §§ 2(c) ("At the earliest practical time, but in no event later than 30 days, after the convicting court makes the findings required under Subsections (a) and (b), the convicting court shall appoint the office of capital and forensic writs . . . unless the applicant elects to proceed pro se or is represented by retained counsel."), 3 (referring to investigation of claims by appointed counsel and trial court's role in approving expenses).

[32]  *See id.*; *In re Reynoso*, 161 S.W.3d 516, 516 (Tex. Crim. App. 2005) ("Article 11.071 normally allows only 30 days after the finding of indigency to appoint counsel under Section 2 (a-c).").

[33]  TEX. CODE CRIM. PROC. art. 11.071, § 5(b)(3)(A) ("If the convicting court receives a subsequent application, the clerk of the court shall . . . immediately send to the court of criminal appeals a copy of . . . the application"), (c) ("On receipt of the copies of the documents from the clerk, the court of criminal appeals shall determine whether the requirements of Subsection (a) have been satisfied.  The convicting court may not take further action on the application before the court of criminal appeals issues an order finding that the requirements have been satisfied.").

subsequent application is filed.

The legislature's purpose in enacting the subsequent-application bar was to limit habeas applicants to *one* bite at the apple absent exceptional circumstances, though we have recognized that this one bite should be a "full one."[34] Ford had his chance at a full bite at the apple. He filed his initial application and it was denied. To allow a convicted person to engage in a fishing expedition under the auspices of researching a claim that *might* fall within a § 5 exception so that he *might* file a subsequent application in the future would open the floodgates to anticipatory subsequent-application discovery requests, seriously compromising the legislative purpose of limiting the amount of post-conviction habeas litigation.

And allowing a *trial court* to authorize such a fishing expedition conflicts with the legislature making *this Court* the gatekeeper in capital cases for whether a § 5 exception is met. If a trial court is not allowed to do anything when a subsequent Article 11.071 application is *filed* until this Court has decided that habeas proceedings may continue, it necessarily follows that a trial court cannot issue orders in anticipation of a subsequent application that has not even been filed yet.

To the extent a habeas applicant might believe that discovery would help prove a claim that would meet a § 5 exception, such an applicant is not without a remedy. To obtain a remand to the trial court under § 5, an applicant must make a "prima facie showing," not prove his entire case.[35] In such a prima facie showing, the habeas applicant must, in addition to showing previously

---

[34] *Ex parte Torres*, 943 S.W.2d 469, 473-74 (Tex. Crim. App. 1997); *see also Ex parte Sledge*, 391 S.W.3d 104, 110 & n.36 (Tex. Crim. App. 2013) (citing *Torres*).

[35] *Ex parte Campbell*, 226 S.W.3d 418, 422 (Tex. Crim. App. 2007) (emphasis added) (new facts exception); *see also Ex parte Brooks*, 219 S.W.3d 396, 400 (Tex. Crim. App. 2007) (new law exception); *Ex parte Reed*, 271 S.W.3d 698, 733 (Tex. Crim. App. 2008) (innocence-gateway exception).

unavailable evidence or law (or making a prima facie showing of meeting an innocence-gateway or punishment-gateway exception), "allege sufficient specific facts that, *if proven*, establish a federal constitutional violation sufficiently serious as to likely require relief from his conviction or sentence."[36]

If a habeas applicant has a good faith basis for believing that discovery will yield evidence showing a constitutional violation, he can *file a subsequent habeas application* and allege in that application what discovery he needs, what he expects the discovery to show, why he expects the discovery to show it, and why he cannot get the evidence without the discovery order he seeks. He would also want to allege why the evidence was unavailable when he filed his previous application or what new law was unavailable or why he meets the innocence-gateway or punishment-gateway exception.[37] This Court can then consider those allegations in determining whether the habeas applicant has established a prima facie case of meeting § 5 that would justify remanding the case to the trial court for further proceedings.

In short, there is no pending proceeding that would authorize the trial court to exercise jurisdiction by issuing the Access Order. And in exercising jurisdiction, the trial court essentially usurped this Court's authority to determine whether there will be any trial proceedings on a subsequent capital habeas application. And if Applicant has a good-faith basis for the discovery he seeks, he can file a habeas application, with the evidence he has, and present his arguments for why

---

[36] *Campbell*, *supra* (emphasis added); *see also Brooks*, *supra*.

[37] *See* TEX. CODE CRIM. PROC. art. 11.071, §5(a)(1)-(3).

his proposed discovery order would be justified.[38] Because the trial court had no jurisdiction to issue the Access Order, TDCJ is entitled to mandamus relief.[39]

Concluding that TDCJ has no justiciable interest in the Funding Order, we deny relief on TDCJ's challenge to the portion of trial court's March 27, 2024 order that directs payment to be made by El Paso County. Concluding, however, that TDCJ has demonstrated a right to relief on the Access Order, we conditionally grant mandamus relief on, and order the trial court to rescind, the portion of trial court's March 27, 2024 order that directs "the warden of the Polunsky Unit-TDCJ

---

[38] The dissent asks how an applicant can allege facts that, if proven, establish his right to relief when he does not know what the facts are. The dissent further asks if the Court is signaling that conclusory and bare assertions about what might be out there would be enough for a habeas application, so long as that speculation would get him across the finish line. The dissent's concerns are overblown. A habeas applicant may well know exactly what he hopes the information he seeks will show, and he will know whether he has any reasonable basis for believing that the information will show that. In the present case, for example, Ford seeks genetic testing to show that he was incapable of kicking down a door without seriously injuring himself. He knows exactly what he hopes the testing will show—that he has brittle bone syndrome (known by its scientific name as Osteogenesis Imperfecta, or referred to in short as "OI"). And one can assess the likelihood of a positive result to a test for OI by whether the defendant manifests some of the rather large number of possible symptoms of the condition.

[39] The dissent claims that there is a lack of binding precedent to show an indisputable absence of authority. We disagree. We have binding precedent on the lack of general jurisdiction, and how special jurisdiction operates, once a case become final. *See supra* at nn.9-10, 28-29. Moreover, as explained earlier, the precise factual scenario need not have been previously addressed if the principle of law has been clearly established. *See supra* at n.8. That observation seems especially appropriate when a trial court acts without jurisdiction after a case becomes final. No doubt creative attorneys, given time, could come up with numerous ways to have a trial court act without post-finality jurisdiction that we have not specifically held to be improper. The dissent also relies on a dissent by Judge Slaughter in a prior case. *See In re Texas Dep't of Crim. Justice*, 668 S.W.3d 375, 382–84 (Tex. Crim. App. 2023) (Slaughter, J., dissenting). "[B]ut the dissent is just that - a dissent." *Masterson v. State*, 155 S.W.3d 167, 175 (Tex. Crim. App. 2005). And we point out that mandamus relief is also warranted when dictated by an unambiguous statute. *In re State ex rel. Wice*, 668 S.W.3d 662, 683 (Tex. Crim. App. 2023). As we have explained, Article 11.071 unambiguously precludes action at the trial level in connection with a subsequent application until this Court has decided that the habeas action may proceed. *See supra* at n.33.

[to] allow access to Mr. Ford . . . by personnel from Dr. Luna's office." The writ of mandamus will issue only if the trial court fails to comply with this opinion.

Delivered: March 26, 2025

Publish