

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-48,152-08

### Ex parte GARCIA GLEN WHITE, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### IN CAUSE NO. 723847-E IN THE 180TH JUDICIAL DISTRICT COURT
### HARRIS COUNTY

KELLER, P.J., delivered the opinion of the Court in which KEASLER, HERVEY, RICHARDSON, YEARY and NEWELL, JJ., joined. RICHARDSON, J., filed a concurring opinion in which HERVEY and NEWELL, JJ., joined. ALCALA, J., filed a dissenting opinion in which MEYERS and JOHNSON, JJ., joined.

In this death-penalty case, in a subsequent habeas application, applicant claims that, if certain newly discovered scientific evidence had been available at trial, it would likely have changed the jury's answers to the special issues. Applicant claims that this new evidence entitles him to relief under Article 11.073.[1] We conclude that it does not, because evidence that would have changed only punishment does not satisfy Article 11.073's requirement that the new evidence show that applicant "would not have been convicted." Consequently, we dismiss the application.

### I. BACKGROUND

---

[1] TEX. CODE CRIM. PROC. art. 11.073.

Applicant filed a previous application in January 2009, and he filed the current application in January 2015. He now alleges that a scientific paper written in 2009 indicates that a regular user of cocaine has a high probability of developing or experiencing psychotic symptoms.[2] He contends that this evidence would have changed the jury's or a juror's answers to one of the special issues. In our file-and-set order, we said, "By its plain language, Article 11.073 does not seem to apply to newly discovered scientific evidence affecting only the punishment stage of trial."[3] Concluding that we needed to address this issue before ordering other proceedings on applicant's claim, we filed and set the application and ordered the parties to file briefs on "whether new scientific evidence presented pursuant to Article 11.073 can affect only punishment phase evidence."[4] Applicant, the State, and two amici on behalf of applicant[5] have filed briefs.

## II. ANALYSIS

### A. Meaning of the Statute

#### 1. *The Statutory Language and General Principles of Construction*

Among other things, Article 11.073 requires an applicant to show that, "had the scientific evidence been presented at trial, on the preponderance of the evidence the person would not have

---

[2] We have already decided that applicant's first two claims are barred by the subsequent-application prohibition in the capital-habeas statute. *Ex parte White*, 485 S.W.3d 431, 432 (Tex. Crim. App. 2016). *See* TEX. CODE CRIM. PROC. art. 11.071, § 5.

[3] *White*, 485 S.W.3d at 432.

[4] *Id.*

[5] One amicus brief is sponsored by the Texas Criminal Defense Lawyers Association (TCDLA), the Harris County Criminal Lawyers Association, and the Harris County Public Defender's Office; the other amicus brief is sponsored by the Office of Capital and Forensic Writs (OCFW). When referring to individual amicus briefs, we will designate them as "TCDLA" and "OCFW" respectively.

been convicted."[6]  Applicant concedes that, "by its plain language, article 11.073 does not appear to apply to newly discovered evidence that would affect the punishment phase of a capital trial."  He argues, though, that we are constitutionally required to allow challenges, under the statute, to punishment in a death-penalty case.  The amici claim that the pertinent language of the statute can be construed to apply to death-penalty punishment determinations.

In construing a statute, we give effect to the plain meaning of its text unless the text is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended.[7]  In determining plain meaning, we consult dictionary definitions, apply the rules of grammar, and consider words in context.[8]  If the statutory language is ambiguous or leads to absurd results, we can consider extratextual factors such as the object sought to be attained, the legislative history, and the consequences of a particular construction.[9]

### 2. *"Would Not Have Been Convicted"* versus *"Would Have Received Different Punishment"*

TCDLA amicus contends that the word "convicted" in Article 11.073 should be interpreted in light of the meaning that we have given to the word "conviction" and that the word "conviction" was construed in the habeas context in *Ex parte Evans*[10] to include both the judgment of guilt and the assessment of punishment.  OCFW amicus contends that "convicted" must be interpreted in light

---

[6]  TEX. CODE CRIM. PROC. art. 11.073(b)(2).

[7]  *Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[8]  *Perry*, 483 S.W.3d at 902.

[9]  *Id.* at 903; TEX. GOV'T CODE § 311.023.

[10]  964 S.W.2d 643 (Tex. Crim. App. 1998).

of the meaning of the word "conviction" as it appears in Articles 11.07 and 11.071 and that, in those contexts, the word is construed as encompassing both guilt and punishment.[11] It is true that legal dictionaries have sometimes referred to "convicted" by saying "See Conviction,"[12] and definitions of "conviction," though generally referring to guilt, sometimes include the assessment of punishment.[13] It is also true, though, that the word "convicted" is more likely to refer solely to guilt than the word "conviction" is.[14]

But even if the term "convicted" includes the assessment of punishment, the amici's claims fail because of the context in which the word "convicted" is used in the statute. *Evans* was concerned with statutory language that referred to a challenge to an existing conviction.[15] Likewise,

---

[11] *See* TEX. CODE CRIM. PROC. arts. 11.07, §§ 3(c) & 4(a) & 11.071, §§ 5(b)(2) & 6(b)(2).

[12] *See Convicted*, BLACK'S LAW DICTIONARY (5th ed. 1979).

[13] *See Conviction*, BALLENTINE'S LAW DICTIONARY (LexisNexis 2010) ("An adjudication that a person is guilty of a crime based upon a verdict or, in a proper case, the ascertainment of guilt by a plea of guilty or nolo contendere. . . . Such is the primary and usual meaning of the term 'conviction' but it is possible that it may be used in such a connection and under such circumstances as to have a secondary or unusual meaning, which would include the final judgment of the court."); *Conviction*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("1. The act or process of judicially finding someone guilty of a crime; the state of having been proved guilty. 2. The judgment (as by a jury verdict) that a person is guilty of a crime."); *Conviction*, BLACK'S LAW DICTIONARY (5th ed. 1979) ("In a general sense, the result of a criminal trial which ends in a judgment or sentence that the accused is guilty as charged."). *See also Conviction*, THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY (1971) ("The proving or finding a person guilty of an offence with which he is charged, before a legal tribunal: legal proof or declaration of guilt : the fact or condition of being convicted : sometimes including the passing of sentence.").

[14] *Contrast Conviction*, OXFORD, *supra* (see above) *with Convicted*, OXFORD, *supra* ("Proved or found guilty; condemned.").

[15] *See Evans*, 964 S.W.2d at 646-47.

Articles 11.07 and 11.071 are concerned with seeking relief from an existing conviction.[16] A challenge to a sentence would necessarily be a challenge to an existing conviction.[17] But the language in the statute before us—"would not have been convicted"—plainly refers to any possible conviction on the charges. That is, the question is whether the applicant would have been convicted at all of the charged offense. Even if an applicant proves that he would have received a different punishment for the charged offense, he has failed to establish that he "would not have been convicted." From the language and context of the statute alone, we conclude that the statute is unambiguous in requiring that a claim under Article 11.073 be one that undermines the verdict or finding of guilt.[18]

We reached the same conclusion regarding identical language in the DNA statute.[19] To obtain DNA testing under Chapter 64, a person must show, among other things, "by a preponderance

---

[16] *See* TEX. CODE CRIM. PROC. arts. 11.07, § 1 ("This article establishes the procedures for an application for writ of habeas corpus in which the applicant seeks relief from a felony judgment imposing a penalty other than death.") & 11.071, § 1 ("[T]his article establishes the procedures for an application for writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death.").

[17] *See Evans*, 964 S.W.2d at 647 ("[T]his Court has most often construed the term 'conviction' to mean a judgment of guilt and the assessment of punishment.").

[18] The dissent cites *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988), for the proposition that the meaning of a word should be evaluated in light of the statute as a whole, but that case actually supports our analysis and undermines the analysis of the dissent. *Timbers* explained, "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme," and terminology can be used "in a context that makes its meaning clear." *Timbers*, 484 U.S. at 371. The dissent construes the word "convicted" in isolation, without assessing its meaning in the context of the phrase "would not have been convicted." By contrast, our construction properly considers the word "convicted" within the context in which it appears.

[19] *Ex parte Gutierrez*, 337 S.W.3d 883, 901 (Tex. Crim. App. 2011).

of the evidence that . . . the person *would not have been convicted* if exculpatory results had been obtained through DNA testing."[20] In *Ex parte Gutierrez*, we emphasized the word "convicted" in the phrase "would not have been convicted" and held that Chapter 64 "does not authorize testing when exculpatory results might affect only the punishment or sentence."[21] A prior construction of an identical phrase in another statute is evidence that the phrases mean the same thing.[22]

*Gutierrez*'s construction of Chapter 64 occurred two years before Article 11.073 was enacted, so the legislature had notice of that construction when it chose to use identical wording.[23] Both Chapter 64 and Article 11.073 are remedial statutes that concern scientific evidence, and the presence of identical standards of proof in both statutes suggests that the legislature contemplated that these statutes would sometimes work together. A showing by a mere preponderance of the evidence that an applicant would not have been convicted if exculpatory DNA results are obtained is not sufficient to warrant relief under this Court's more onerous actual-innocence jurisprudence.[24]

---

[20] TEX. CODE CRIM. PROC. art. 64.03(a)(2)(A) (emphasis added).

[21] 337 S.W.3d at 901.

[22] *See Sanchez v. State*, 138 S.W.3d 324, 329-30 (Tex. Crim. App. 2004) (Construction of the phrase "trial on the merits" in other statutes was in fact a construction that the language "means what it says.").

[23] *Cf. Ex parte Rieck*, 144 S.W.3d 520-21 (Tex. Crim. App. 2004) (Texas statute was passed before Mississippi statute or any Mississippi Supreme Court decision construing Mississippi statute, "so, the Texas Legislature could not have been charged with notice of the parallel provision or of the Mississippi Supreme Court's implied construction of that provision.").

[24] *See Ex parte Harleston*, 431 S.W.3d 67, 70 (Tex. Crim. App. 2014) ("To prevail in a freestanding claim of actual innocence, an applicant must prove by clear and convincing evidence that, despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of the new evidence.") (internal quotation marks omitted). *See also Ex parte Robbins*, 478 S.W.3d 678, 690 (Tex. Crim. App. 2014) ("Prior to the enactment of article 11.073, newly available scientific evidence per se generally was not recognized as a basis for habeas

But Article 11.073 affords an avenue for relief under the preponderance standard.[25] The fact that these statutes are not only similar in purpose and operation, but also appear designed to work together, with the identical phrase accomplishing that cooperation, strongly supports interpreting the same phrase to mean the same thing.[26]

### 3. *Community Supervision and Deferred Adjudication*

TCDLA also claims that the word "convicted" must be accorded a broad meaning to account for the fact that Article 11.073 provides a remedy for Article 11.072 filers, which include individuals on regular community supervision and deferred adjudication.[27] TCDLA claims that neither type of 11.072 filer has a final conviction. While not considered a final conviction for the purpose of Article

---

corpus relief and could not have been reasonably formulated from a final decision of this Court or the United States Supreme Court, unless it supported a claim of 'actual innocence' or 'false testimony.'").

[25] *Compare* Tex. Code Crim. Proc. art. 11.073(b)(2) *with id.* art. 64.03(a)(2)(A).

[26] *See Ex parte Benson*, 459 S.W.3d 67, 87 (Tex. Crim. App. 2015) (treatment of DWI enhancements consistent with the treatment of similar theft provisions); *Scott v. State*, 55 S.W.3d 593, 596 (Tex. Crim. App. 2001) (Language of savings clause was "substantively identical to savings clauses in past amendments that added new enhancement provisions" and should thus be construed the same.). *See also Phillips v. State*, 463 S.W.3d 59, 69-71 (Tex. Crim. App. 2015) (concurring opinions by Keller, P.J. & Newell, J.) (Parallel language of accomplice-witness statute and the jailhouse-informant statute indicates that the latter statute was designed to operate like the former.).

In claiming that extratextual factors support a conclusion that Article 11.073 applies to both guilt and punishment in a capital case, the dissent claims that the holding in *Gutierrez* regarding the identically worded phrase in the DNA testing statute does not control because the DNA testing statute is not a habeas statute governed by the command in Article 11.04 that habeas statutes be most favorably construed to effect a remedy. However, even if the statutory language at issue here were ambiguous, the existence of the holding in *Gutierrez* at the time the legislature enacted Article 11.073, with the identical language, is far more persuasive evidence of the legislature's intent than the general notion (relied upon by the dissent) that the legislature was concerned about the accuracy of determinations made in criminal proceedings. *See also infra* at parts II.A.5 & II.A.6.

[27] *See* Tex. Code Crim. Proc. art. 11.073(b)(1) (referring to a person who has filed an application under Article 11.07, 11.071, or 11.072).

11.07[28] and many enhancement statutes, a judgment imposing regular community supervision is in fact a conviction with an assessed sentence, though that sentence is not imposed, and such a conviction is final for some purposes.[29] Consequently, nothing in our construction today prevents a person on regular community supervision from seeking relief under Article 11.073 as long as the new scientific evidence undermines the verdict or finding of guilt.[30]

---

[28] *Ex parte Renier*, 734 S.W.2d 349, 351 (Tex. Crim. App. 1987) ("[B]ecause applicant was granted probation, there is no final conviction.").

[29] *Yazdchi v. State*, 428 S.W.3d 831, 838, 844 (Tex. Crim. App. 2014) (Person whose felony probation is terminated in the usual manner remains "convicted of a felony, although it may not be a final conviction for use as an enhancement offense to elevate the punishment range in a future criminal proceeding," but "that person has been convicted of a felony, even though he never went to prison and, for some purposes, it is not a 'final' felony conviction.") (quoting *Cuellar v. State*, 70 S.W.3d 815, 818 (Tex. Crim. App. 2002)) (internal quotation marks omitted). *See* TEX. CODE CRIM. PROC. art. 42.12, §§ 2(B) (Definition of regular community supervision includes a specified period during which "a sentence of imprisonment or confinement, imprisonment and fine, or confinement and fine, is probated and the imposition of sentence is suspended in whole or in part."), 23 (On revocation of regular community supervision, "the judge may proceed to dispose of the case as if there had been no community supervision" or may reduce the term of confinement if determined to be in the best interest of society and the defendant.).

[30] Deferred adjudication, on the other hand, is not a conviction. *Ex parte Smith*, 296 S.W.3d 78, 80 (Tex. Crim. App. 2009); *Ex parte Welch*, 981 S.W.2d 183, 185 (Tex. Crim. App. 1998). *See* TEX. CODE CRIM. PROC. art. 42.12, §§ 2(A) (Deferred adjudication occurs when "criminal proceedings are deferred without an adjudication of guilt."), 5(b) (On revocation of deferred adjudication, "all proceedings, including the assessment of punishment, the pronouncement of sentence, granting of community supervision, and defendant's appeal continue as if the adjudication of guilt had not been deferred."). However, in some situations, it is deemed one for limited purposes. *See Ex parte Cooke*, 471 S.W.3d 827, 830-31 (Tex. Crim. App. 2015); *Scott*, 55 S.W.3d at 595-96. At least one court of appeals has held that a person on deferred adjudication is *not* a convicted person under Chapter 64 and cannot use its procedures to obtain DNA testing. *State v. Young*, 242 S.W.3d 926, 927-29 (Tex. App.–Dallas 2008, no pet.) ("Young, however, has not been convicted of a crime. Rather, his finding of guilt was deferred, and he successfully completed his deferred adjudication probation. Because chapter 64 specifically provides that a convicted person may seek post-conviction DNA testing, it follows that a person who has not been convicted is not entitled to seek relief under chapter 64."). This holding would be consistent with a holding that a person on deferred adjudication does not qualify as a convicted person eligible for relief under Article 11.073. We need not decide that question today or the one addressed in *Young*.

And even if the meaning of the word "convicted" did include defendants who were given regular community supervision or deferred adjudication, their new scientific evidence would still need to pertain to the verdict or finding of guilt in order for the statute to apply. The words "would not have been convicted" would prohibit challenges to a sentence, a fine,[31] the term of community supervision, and a condition of supervision.[32]

### 4. *Lesser-Included Offenses versus Punishment Mitigating Issues*

TCDLA also contends that restricting Article 11.073's application to the guilt phase of trial "would draw an arbitrary distinction between new forensic evidence which is relevant to a lesser-included offense and new forensic evidence which is relevant to a mitigation issue or aggravating factor." But the legislature is vested with broad power to classify crimes and punishments and can choose whether to define something as an element of the crime or as a punishment issue.[33] The issue of "sudden passion" illustrates how designating an issue as a punishment mitigator instead of as an element of an offense can cause an issue that would have otherwise existed to disappear altogether in a particular prosecution. Sudden passion used to be an element that distinguished a lesser-included offense of voluntary manslaughter from murder (and capital murder), but now it is a

---

[31] A defendant can be placed on regular community supervision or deferred adjudication without the fine being probated. *See* TEX. CODE CRIM. PROC. art. 42.12 §§ 3(a) (Judge may "impose a fine applicable to the offense and place the defendant on community supervision."), 5(a) ("The judge may impose a fine applicable to the offense.").

[32] *Compare id.* art. 11.072, § 2(b)(1) (authorizing challenges to "the conviction for which or order in which community supervision was imposed") *with id.* § 2(b)(2) (authorizing challenges to "the conditions of community supervision").

[33] *Mays v. State*, 318 S.W.3d 368, 387 n.67, 388 n.72 (Tex. Crim. App. 2010) (quoting *Wesbrook v. State*, 29 S.W.3d 103, 112-13 (Tex. Crim. App. 2000)).

punishment mitigator for murder.[34]  Under the old law, if evidence at the guilt phase of a capital-murder trial raised sudden passion, then the lesser-included offense of voluntary manslaughter could be submitted to the jury at that phase of trial.[35]  Under current law, however, sudden passion would never be an issue in the guilt phase of any prosecution,[36] and sudden passion is not an issue submitted at the punishment phase of a capital-murder case,[37] so a defendant on trial for capital murder could not use the sudden passion issue at either guilt or punishment.  So, in capital murder cases, the change in law eliminated the ability of defendants at trial to use the sudden-passion issue to secure a jury finding that would reduce what would otherwise be a capital felony to a felony of the second degree.[38]  We have rejected claims that the legislature did not or could not have caused such a result.[39]

### 5. *Accuracy versus Finality*

TCDLA also suggests that Article 11.073 should be interpreted broadly "as a matter of public policy and express legislative intent" because the statute "embodies a strong legislative desire to choose accuracy in the results of a case over finality."  But this "accuracy over finality" policy rationale is irrelevant if the statutory language is unambiguous and the plain meaning does not lead

---

[34]  *See id.* at 387-88.

[35]  *See Moore v. State*, 969 S.W.2d 4, 8-11 (Tex. Crim. App. 1998).

[36]  *See* TEX. PENAL CODE § 19.02(d) ("At the punishment stage of trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause.").

[37]  *See* TEX. CODE CRIM. PROC. art. 37.071, *passim*.

[38]  *See Mays*, 318 S.W.3d at 387-88.

[39]  *Id.*

to absurd results. We have already held that the language is unambiguous, and it is obvious that the plain meaning does not lead to absurd results: the legislature could have rationally decided that it wanted to limit Article 11.073's incursion against finality interests to situations that brought into question the defendant's guilt. In fact, we have held that that was the legislature's intent in connection with the DNA testing statute.[40]

TCDLA cites Article 11.04's requirement that habeas provisions be "most favorably construed in order to give effect to the remedy, and protect the rights of the person seeking relief under it,"[41] but nothing is cited that specifically supports the notion that the legislature intended for accuracy considerations to trump finality considerations in every case. The habeas statutes are littered with evidence to the contrary, with, for example, prohibitions against subsequent applications unless exceptional circumstances are shown.[42] Article 11.073 itself contains other limitations on its truth-seeking remedy aside from the one at issue here: that the new evidence was unavailable at the applicant's trial and would be admissible at any current trial.[43]

### 6. *"Innocence of the Death Penalty"*

OCFW contends that, if Article 11.073 provides a remedy only when evidence calls guilt into question, it would still provide a remedy for punishment claims that allege "innocence of the death penalty." OCFW contends that this would be the case if, with the new scientific evidence, the jury

---

[40] *Gutierrez*, 337 S.W.3d at 901 n.59 (citing *Kutzner v. State*, 75 S.W.3d 427 (Tex. Crim. App. 2002)).

[41] TEX. CODE CRIM. PROC. art. 11.04.

[42] *See id.* arts. 11.07, § 4; 11.071, § 5; 11.072, § 9; 11.073(c).

[43] *See id.* art. 11.073(b)(1).

would not have answered one of the special issues in the State's favor. OCFW offers as an example evidence that would show that the defendant was in fact a non-triggerman who did not have the culpability necessary to allow the imposition of the death penalty.

The phrase "innocence of the death penalty" is derived from federal habeas jurisprudence and is a description of a particular application of a narrow exception to the rule that requires a showing of cause and prejudice for failing to raise a claim in an earlier proceeding.[44] The exception is sometimes known as the "actual innocence" exception and sometimes known as the "miscarriage of justice" exception.[45] This exception is not a claim by itself, but a gateway that allows the assertion of an otherwise defaulted constitutional claim.[46] Where the defendant is asserting that he is actually innocent of committing the crime, the miscarriage of justice exception is straightforward, with a concept of "actual innocence" that is "easy to grasp."[47]

The Supreme Court has developed "an analogous framework" for certain challenges to death sentences.[48] But the Supreme Court has acknowledged that actual innocence "does not translate easily into the context of an alleged error at the sentencing phase of a trial on a capital offense"[49] and that the phrase "innocent of death" is "not a natural usage of those words."[50] Despite the occasional

---

[44] *Sawyer v. Whitley*, 505 U.S. 333, 338-41 (1992).

[45] *See id.* at 339.

[46] *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Ex parte Fournier*, 473 S.W.3d 789, 791 (Tex. Crim. App. 2015).

[47] *Sawyer*, 505 U.S. at 340-41.

[48] *Id.* at 341.

[49] *Id.* at 340.

[50] *Id.* at 341.

use of this unnatural phrase, the Supreme Court has not treated a jury's answers to the punishment issues as the equivalent of a guilt determination. Although the Court held in *Ring v. Arizona* that the constitutional right to a jury trial attaches to a determination regarding the existence of an aggravating factor necessary to impose the death penalty,[51] in *Kansas v. Marsh*, the Court upheld a sentencing system that imposed death if the jury found that the aggravating and mitigating circumstances are in equipoise.[52] In response to an argument made by the dissent in the latter case regarding DNA testing, the Supreme Court remarked, "[T]he availability of DNA testing, and the questions it might raise about the accuracy of the guilt-phase determinations in capital cases, is simply irrelevant to the question before the Court today, namely, the constitutionality of Kansas' capital *sentencing* system."[53]

In our own "actual innocence" jurisprudence, we have restricted the use of the term "actual innocence" to refer only to circumstances "in which an accused did not, in fact, commit the charged offense or any of the lesser-included offenses."[54] Although we have granted relief on punishment claims on a rationale that somewhat parallels our actual-innocence jurisprudence, we have expressly eschewed the "actual innocence" label.[55] So even though some punishment claims, including some that relate to capital punishment, may be analogous to claims of innocence, the caselaw from the

---

[51] 536 U.S. 584, 609 (2002).

[52] 548 U.S. 163, 181 (2006).

[53] *Id.* at 180 (emphasis in original).

[54] *Fournier*, 473 S.W.3d at 792.

[55] *See Ex parte Rich*, 194 S.W.3d 508, 515 (Although the applicant's claim that his enhancement was untrue "is similar to those advanced in actual innocence cases," it is "incorrect to treat this case as if it involves such a claim.").

Supreme Court and this Court acknowledge that such analogous punishment claims are not really about innocence.

Moreover, the federal miscarriage-of-justice exception for death-penalty determinations (i.e. "innocence of the death penalty" exception) imposes a higher burden of proof than mere preponderance of the evidence: "*clear and convincing evidence* that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law."[56] In Article 11.071, the legislature modeled an exception to the subsequent-application prohibition on the federal standard, incorporating the "clear and convincing evidence" burden of proof for whether "no rational juror would have answered in the state's favor one or more of the special issues."[57] By contrast, a separate exception imposes the lower "preponderance of the evidence" burden of proof for whether "no rational juror could have found the applicant guilty beyond a reasonable doubt."[58] This contrast shows that, in Article 11.071, the legislature intended for the higher "clear and convincing" burden of proof to apply to "innocence of the death penalty" determinations while the lower "preponderance" burden of proof would apply to a determination of innocence of the crime charged. The fact that the legislature used only the "preponderance" burden of proof in Article 11.073 is a further indication that the phrase "would not have been convicted" was not intended to encompass death-penalty determinations.[59]

---

[56] *Sawyer*, 505 U.S. at 335 (emphasis added).

[57] *See* TEX. CODE CRIM. PROC. art. 11.071, § 5(a)(3).

[58] *Id.* § 5(a)(2).

[59] Arguably, standard of proof aside, applicant's claim would fail to satisfy the requirements of the Supreme Court's "innocence of the death penalty" exception because his proffered evidence would not negate his eligibility for the death penalty. The Supreme Court has rejected the notion that

Further, in *Gutierrez*, we explicitly rejected the notion that the words "would not have been convicted" in Chapter 64 encompassed the punishment in a capital case.[60] Not only does the *Gutierrez* decision speak to the common understanding of what the phrase "would not have been convicted" means, but, as we have explained, *Gutierrez* existed at the time the legislature enacted Article 11.073, so the legislature was on notice of how the words "would not have been convicted" were being construed by this Court in a closely related context.[61]

## B. Constitutionality of the Statute

Applicant contends that restricting the application of Article 11.073 to claims that undermine the verdict or finding of guilt violates the Separation of Powers Clause of the Texas Constitution and violates due process principles. In support of his separation of powers contention, applicant argues that "death is different" and that the legislature "cannot restrict this Court from carrying out its duty by limiting the manner and means in which it reviews the legality of a sentence of death." Applicant also argues that "death is different" in support of his due process contention, and he claims that juries ought to be given information that lessens a defendant's moral culpability by showing, for example,

---

the exception encompasses "the existence of additional mitigating evidence" and has limited the exception to evidence that negates the existence of "an aggravating circumstance or . . . some other condition of eligibility" for the death penalty. *Sawyer*, 505 U.S. at 345. *See also Bell v. Thompson*, 545 U.S. 794, 812 (2005) (discussing *Sawyer*).

[60] 337 S.W.3d at 901.

[61] *See also supra* at n.26. The dissent claims that our construction of the statute means that applicants who cannot make out a cognizable constitutional claim will have no avenue of collateral attack on flawed scientific evidence used in the punishment phase of a capital murder prosecution. That just means, however, that an applicant would have to allege a cognizable constitutional violation, as is typically required to obtain relief on habeas corpus. *See Ex parte Ramey*, 382 S.W.3d 396, 397 (Tex. Crim. App. 2012) ("Habeas corpus is available only for jurisdictional defects and violations of constitutional or fundamental rights.").

that he was not the triggerman or had some lessened mental capacity. In a third argument, applicant claims that Article 11.073 must apply to new scientific evidence that would affect only the punishment phase of a capital murder trial "because the content and scope of mitigating evidence cannot be limited." In this third argument, he relies upon Eighth Amendment jurisprudence from the Supreme Court that indicates that a jury's consideration of mitigating evidence in a death-penalty trial should not be restricted.

> The Texas Separation of Powers Clause provides:
>
> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.[62]

This provision is violated when (1) one branch of government assumes or is delegated a power "more properly attached" to another branch, or (2) one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers.[63] With respect to the writ of habeas corpus, the Texas Constitution authorizes the legislature to "enact laws to render the remedy speedy and effectual."[64]

Applicant appears to be claiming that the legislature, by limiting the application of Article 11.073 to guilt claims, has unduly interfered with a power assigned to this Court in reviewing death-penalty cases. But when a remedy derives solely from legislative enactment, the legislature has the

---

[62] TEX. CONST. art. II, § 1.

[63] *Ex parte Lo*, 424 S.W.3d 10, 28 (Tex. Crim. App. 2014).

[64] TEX. CONST. art. I, § 12.

power to place limitations on the remedy, even when those limitations govern how courts consider claims. In *Rushing v. State*, we rejected a separation of powers challenge to Article 4.18,[65] which imposed a preservation-of-error rule for certain jurisdictional claims based on juvenile status.[66] With respect to the effect of Article 4.18 on the right to appeal, we explained that "[t]he Legislature could have denied entirely any right to appeal the absence of a juvenile court waiver of jurisdiction. It therefore follows that the Legislature could, instead of denying an appeal in its entirety, place limitations upon the ability to raise this type of claim on appeal."[67] Further upholding Article 4.18 with respect to other remedies such as habeas corpus, we explained, "It is the Legislature, after all, that established the juvenile court system, and ultimately it is up to that body to determine what procedures guide the movement of cases from that system to the adult criminal court system."[68] High courts in other states have agreed with the rather common-sense assessment that legislatively created remedies can constitutionally include legislatively created restrictions.[69]

---

[65] Tex. Code Crim. Proc. art. 4.18.

[66] *Rushing v. State*, 85 S.W.2d 283 (Tex. Crim. App. 2002).

[67] *Id.* at 286.

[68] *Id.* at 286-87.

[69] *In re Estate of Olson*, 181 So. 2d 642, 643 (Fla. 1966) (upholding the attestation requirements for probate: "The right of testamentary disposition of property does not emanate from the organic law but is a creature of law derived solely from statute without constitutional limitation and is at all times subject to regulation and control by legislative authority."); *Sears, Roebuck, & Co. v. City of Portland*, 144 Me. 250, 254, 68 A.2d 12, 14 (1949) (addressing a right to review by bill of exceptions: "But for the statute there would be no right of exception and no Law Court. . . . While the statute grants the right to defeated litigants to bring their grievances to the Law Court for review, that is not a constitutional, nor even a common law right. The legislature has authority to repeal that statute, and withhold the right of an appeal . . . and compel suitors to be content with results reached in the trial courts. Or the right may be granted subject to such restrictions, limitations and conditions as the legislature may annex."); *Arkansas Utilities Co. v. City of Paragould*, 200 Ark. 1051, 1054,

In *State v. Patrick*, involving the DNA testing statute (Chapter 64), we granted mandamus relief against a trial court that ordered testing under the statute when one of the statutory requirements was not met.[70] The lead opinion in that case explained that, once a conviction has been affirmed on appeal and mandate has issued, "general jurisdiction is not restored to the trial court," but the trial court retains "special or limited jurisdiction to ensure that a higher court's mandate is carried out and to perform other functions specified by statute."[71] A statute such as Chapter 64 confers authority on the trial court to act in some situations but does not confer authority to act when the statute's requirements are not satisfied, and a trial court that purports to act under such a statute when its requirements are not satisfied acts without jurisdiction.[72] Other cases have followed the pronouncements in *Patrick*'s lead opinion, holding that various "post-conviction statutes define the

---

143 S.W.2d 11, 13 (1940) (rejecting a constitutional challenge to a provision of a statute that required the approval of the Arkansas State Department before a city could construct an electric grid outside the city limits because a municipality's right to do so "is dependent upon the statute and, but for the statute in question, a municipality would have no right to construct and operate such a system outside the city limits, even with the consent of the Department"); *Murray Motor Co. v. Overby*, 217 Ky. 198, 201, 289 S.W. 307, 308 (1926) ("The Declaratory Judgment Act provided an entirely new remedy, and in doing so it was competent for the legislature to withhold altogether the right of appeal, or to enact such restrictions and qualifications thereon as a prerequisite to the right as it saw proper."); *Board of County Commissioners v. Story*, 26 Mont. 517, 522-23, 69 P. 56, 58 (1902) (Supreme Court of Montana refused to rule unconstitutional a statute of limitations provision that applied to a statutory remedy for enforcing the payment of taxes: "[B]ut for the statute creating it, the remedy would not exist. The lawmaking power, having authority to prescribe or withhold altogether a particular remedy, may, in its enactment, invest it with such restrictions as will, in its judgment, best subserve the public good.").

[70] 86 S.W.3d 592 (Tex. Crim. App. 2002).

[71] *Id.* at 594 (plurality op.).

[72] *Id.* at 595.

scope of the trial court's jurisdiction"[73] and that "Chapter 64 expanded the jurisdiction of the trial court, *but only to the extent prescribed by the statute*."[74]  *Patrick* and its progeny further contradict the notion that a court can be required by constitutional principles to consider claims under a remedial statute that are not authorized by the language of that statute.  Quite the opposite: if the statute is what creates the remedy, and the claim at issue does not qualify under the statute, then the court is prohibited from granting relief under the statute.

This analysis answers not only applicant's separation of powers claim, but also his claims based on due process and cruel and unusual punishment.  The cases upon which applicant relies for the latter two claims discuss what evidence should be available at trial before a jury.  Those cases do not address what evidence must be considered in a postconviction proceeding involving a remedy created solely by statute.  The Supreme Court has explained, "When a state chooses to offer help to those seeking relief from convictions, due process does not dictate the exact form such assistance must assume."[75]

Applicant's contention also appears to run counter to our principles of statutory construction.  When the meaning of a statute is plain, "the courts should not add to or subtract from it."[76]  In fact, "the Legislature is constitutionally entitled to expect that the judiciary will faithfully follow the

---

[73]  *Staley v. State*, 420 S.W.3d 785, 795 (Tex. Crim. App. 2013) (reciting the *Patrick* plurality's statement regarding "general jurisdiction").

[74]  *Wolfe v. State*, 120 S.W.3d 368, 372 (Tex. Crim. App. 2003) (emphasis added).

[75]  *District Attorney's Office v. Osborne*, 557 U.S. 52, 69 (2009).

[76]  *Ex parte Vela*, 460 S.W.3d 610, 612 (Tex. Crim. App. 2015).

specific text that was adopted."[77] Applicant's claim is essentially a request for *this Court* to violate separation of powers by failing to faithfully effectuate the actual wording of Article 11.073.

Like Chapter 64, Article 11.073 is a statute that created a remedy that did not exist, and was not required to exist, prior to the enactment of the statute.[78] Because the legislature was not required to create the remedy at all, it had the power to restrict the scope of the remedy that it did create. As a result, courts are not authorized to grant relief under Article 11.073 on claims that do not meet the statute's requirements. One of those requirements is that the applicant's proffered new scientific evidence show, by a preponderance of the evidence, that the applicant "would not have been convicted." Because applicant's proffered scientific evidence relates solely to punishment, his evidence cannot meet that requirement.

We dismiss the application pursuant to Article 11.071, § 5.

Delivered: November 2, 2016
Publish

---

[77] *Boykin*, 818 S.W.2d at 785.

[78] *Robbins*, 478 S.W.3d at 690 ("Article 11.073 provides a new legal basis for habeas relief.")