

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-77,112

**JEDIDIAH ISAAC MURPHY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON DIRECT APPEAL FROM DENIAL OF MOTION FOR FORENSIC DNA TESTING IN CAUSE NO. F00-02424-M FROM THE 194TH JUDICIAL DISTRICT COURT DALLAS COUNTY

*Per curiam.*

## O P I N I O N

Appellant appeals from a trial court order denying his motion for post-conviction DNA testing filed pursuant to Texas Code of Criminal Procedure Chapter 64.[1] Appellant raises two points of error. After reviewing the issues, we find Appellant's points of error to be without merit. Consequently, we affirm the trial court's order denying testing.

---

[1] References to Chapters or Articles in this opinion are to the Texas Code of Criminal Procedure unless otherwise specified.

I. *Background*

Appellant was convicted in June 2001 for the capital murder of 80-year-old Bertie Cunningham. *See* TEX. PENAL CODE §19.03(a). The evidence showed that on October 4, 2000, Cunningham went shopping at a mall in Plano, Texas. She was returning to her Garland home when Appellant forced her at gunpoint to give him a ride. Ultimately, Appellant forced Cunningham into the trunk of her car and shot her. Appellant then drove Cunningham's car around and used her credit cards to buy alcohol and beer, among other things. At some point, he picked up his niece and two of her school-age friends. He later dropped off his niece, and he and the boys continued driving around. Ultimately, he bought them both motorized scooters before taking them home. He eventually removed Cunningham from the trunk and dumped her in a creek.

As set out in Appellant's motion for DNA testing, the State presented evidence at the punishment phase showing that he engaged in a number of acts of violence and thievery prior to committing the instant offense. This included evidence that:

- In 1993, after leaving a high school graduation party with a girl, Appellant parked the vehicle, pulled out a gun, put it to the girl's head, and asked her if she was afraid to die.

- In 1994, Appellant stole cash and checks from a friend's safe. He was convicted and placed on probation for burglary of a habitation.

- Also in 1994, Appellant stole property from a car. He was convicted and placed on probation for burglary of a motor vehicle.

- In 1995, Appellant helped commit auto theft, for which he was ultimately placed on probation.

- In 1997, Appellant assaulted his girlfriend, Chelsea Willis, and one of her friends. Specifically, he pulled a knife on Willis and broke her nose.

- Around the time that Appellant assaulted Willis, he also carjacked Sherryl Wilhelm in Arlington. Wilhelm testified that the carjacker forced her into her car, choked her, and made her get on the floor before he drove away. Wilhelm escaped from her kidnapper by jumping out of the car on the highway. Wilhelm's car was found abandoned on the side of a highway in Wichita Falls the day after the carjacking. Wilhelm helped the police create a composite sketch of her captor, but the case went cold until 2000 when Wilhelm saw Appellant's picture on television as a suspect in Cunningham's murder. When Wilhelm saw Appellant's picture, she contacted the police. She later identified Appellant in a photo lineup.

- Also in 1997, a man attacked 69-year-old Marjorie Ellis in Wichita Falls and stole her purse. The authorities found property belonging to Ellis in Wilhelm's abandoned car.

- In 2000, Appellant threatened to kill a woman who was trying to help him learn a trade, and he bragged to her about all the different weapons he had access to.

In addition, psychiatrist Jaye Crowder testified that Appellant was chronically depressed, alcohol dependent, narcissistic, and had borderline personality disorder with anti-social features.

After hearing this evidence, the jury answered the punishment questions in a manner requiring the trial court to sentence Appellant to death. This Court affirmed the judgment and sentence on direct appeal. *Murphy v. State*, 112 S.W.3d 592 (Tex. Crim. App. 2003). This Court also denied relief on the claims raised in Appellant's initial habeas application and dismissed his subsequent application as an abuse of the writ. *Ex parte Murphy*, No. WR-70,832-01 (Tex. Crim. App. Mar. 25, 2009) (not designated for publication); *Ex parte Murphy*, No. WR-70,832-02 (Tex. Crim. App. Mar. 21, 2012) (not

designated for publication).

II. *Chapter 64 and the Standard of Review*

As we have previously stated, "There is no free-standing due-process right to DNA testing, and the task of fashioning rules to 'harness DNA's power to prove innocence without unnecessarily overthrowing the established system of criminal justice' belongs 'primarily to the legislature.'" *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011) (quoting *District Attorney's Office v. Osborne*, 557 U.S. 52, 62 (2009)); *see also Ex parte Mines*, 26 S.W.3d 910, 914 (Tex. Crim. App. 2000) (stating that there is no constitutional right to post-conviction DNA testing).  The Texas Legislature created a process for such testing in Chapter 64.

Article 64.01, titled "Motion," defines "biological material" and states that "[a] convicted person may submit to the convicting court a motion for forensic DNA testing of evidence that has a reasonable likelihood of containing biological material."  Art. 64.01(a-1).  The statute further provides that "[t]he motion may request forensic DNA testing only of evidence described by Subsection (a-1) that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense[.]" Art. 63.01(b).  The convicting court may order DNA testing under Chapter 64 only if the court finds that:   (1) the evidence still exists and is in a testable condition; (2) the evidence has been subjected to a sufficient chain of custody; (3) the evidence is reasonably likely to contain biological material suitable for

DNA testing; and (4) identity is an issue in the case. Art. 64.03(a)(1). Additionally, the convicted person must establish by a preponderance of the evidence that:

1. he "would not have been convicted if exculpatory results had been obtained through DNA testing; and"

2. "the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice."

Art. 64.03(a)(2).

In reviewing a judge's ruling on a Chapter 64 motion, this Court gives almost total deference to the judge's resolution of historical fact issues supported by the record and applications-of-law-to-fact issues turning on witness credibility and demeanor. *Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017). But we consider *de novo* all other application-of-law-to-fact questions. *Id*. at 768-69.

III. *The Current Chapter 64 Motion and the Trial Court's Ruling*

In mid-February 2023, the State moved the trial court to set Appellant's execution date. On March 24, Appellant filed in the trial court his Chapter 64 motion for DNA testing. In the motion, he requested testing of:

> any and all evidence collected in the Wilhelm/Ellis robberies, including, but not limited to, any receipts, checkbooks, or paperwork recovered in these offenses. This evidence contains biological material that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense.

Appellant asserts that if exculpatory results are obtained from the evidence collected in the Wilhelm/Ellis robberies, "there is no doubt that the punishment assessed would have

been different."

The trial judge denied the request in a written order which stated in its entirety:

> Before the Court is [Appellant's] Motion for Post-Conviction Forensic DNA Testing under Chapter 64 of the Code of Criminal Procedure. The Court finds that [Appellant's] request fails as a matter of law because he seeks to test only punishment-related evidence. The Court further finds that [Appellant] has not shown by a preponderance of the evidence that his motion is not filed for purposes of delaying execution of sentence or the administration of justice. Accordingly, [Appellant's] motion is hereby DENIED.

The court made no other explicit findings of fact or conclusions of law.

IV. *Appellant's Arguments on Appeal and the Court's Analysis*

In his first point of error, Appellant asserts that the trial court erred in finding that he is not entitled "as a matter of law" to the testing of evidence that relates only to punishment. Appellant recognizes that prior case law has stated that Chapter 64 DNA testing is not available for punishment only evidence, but he argues that this holding should be reexamined in light of the 2003 statutory amendments to Chapter 64. Specifically, Appellant asserts that the amendments deleted language requiring a defendant to show that he would not have been "prosecuted" if exculpatory results had been obtained. Now, he says, the statute requires only that a defendant show that he would not have been "convicted." He further argues that, given Texas' bifurcated system, "convicted" should be interpreted to encompass both the judgment of guilt and the assessment of punishment.

We disagree. In an earlier version of Article 64.03(a)(2)(A), the statute required a

person seeking DNA testing to show by a preponderance of the evidence that he would not have been "prosecuted or convicted" should exculpatory DNA results be obtained. In *Kutzner v. State*, 75 S.W.3d 427, 439 (Tex. Crim. App. 2002), we held that this phrase was subject to different meanings and, thus, was ambiguous. We hypothesized that (1) it could be interpreted to require a convicted person to prove his innocence, or (2) it could be interpreted to require a convicted person to show that "favorable DNA results would result in a different outcome unrelated to the convicted person's guilt/innocence." *Id*. at 437. Looking at legislative history, we determined that the Legislature clearly intended the language to mean the former—that a convicted person seeking DNA testing must show a reasonable probability that exculpatory testing would show his innocence. *Id*. at 439.

The Legislature thereafter amended Chapter 64 in response to our holding in *Kutzner*. It made clear that a defendant must: (1) meet just a preponderance of the evidence standard for showing innocence, and (2) show only that he would not have been convicted. *See Smith v. State*, 165 S.W.3d 361, 364 (Tex. Crim. App. 2005); *see also Wilson v. State*, 185 S.W.3d 481, 491 n.4 (Tex. Crim. App. 2006). In 2011, this Court expressly stated that Chapter 64 "does not authorize testing when exculpatory testing results might affect only the punishment or sentence that [a defendant] received." *Gutierrez*, 337 S.W.3d at 901. This holding is aligned with our interpretation of the Chapter 64 language in *Kutzner* and the Legislature's later amendments of the statutory

language at issue in *Kutzner*. Appellant also urges this Court to consider his assertion that "convicted" should be interpreted to encompass both the judgment of guilt and the assessment of punishment, but the analysis in *Kutzner* and the Legislature's later amendments of the statute reject this interpretation. *See also Ex parte White*, 506 S.W.3d 39, 42-43 (Tex. Crim. App. 2016) (comparing identical "would not have been convicted" phrase in Article 11.073(b)(2) with that in Article 64.03(a)(2)(A) and rejecting idea that "convicted" encompasses more than a finding of guilt).

Further, there is other language in Chapter 64 that supports the trial court's finding. For example, Article 64.01(a-1) states that, "[a] convicted person may submit to the convicting court a motion for forensic DNA testing of evidence that has a reasonable likelihood of containing biological material." Appellant was not convicted of the Wilhelm or Ellis robberies. In fact, he was never brought to trial for them. The convicting court for the capital murder is not necessarily the convicting court for the robberies. Appellant twists the statutory language by suggesting otherwise.

Additionally, Article 64.01(b) says that, "[t]he [Chapter 64 DNA] motion may request forensic DNA testing only of evidence described by Subsection (a-1) *that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense*[.]" (Emphasis added.) In this appeal, the "challenged conviction" is the capital murder conviction. The Wilhelm/Ellis evidence, which was secured three years before the capital murder was committed, was

clearly not secured in relation to the capital murder offense.  Appellant's attempt to argue that evidence of extraneous acts is "secured in relation to" the capital murder on trial is misguided.

Given prior precedent and the statutory language, we conclude that the trial court did not err in determining that Appellant's request for DNA testing under Chapter 64 failed "as a matter of law."  We overrule Appellant's first point of error.

In his second point of error, Appellant asserts that the trial court erred in finding that he had not shown that his DNA testing motion was not filed "for the purposes of unreasonably delaying execution of sentence or the administration of justice."  Appellant notes that Chapter 64 contains no deadline for the filing of a motion.  He also points out that the statute requires a person to show that the request for testing is not made to *unreasonably* delay the execution of sentence or the administration of justice.  Further, he comments that Chapter 64 does not require a movant to explain why he did not raise a claim earlier.  Appellant emphasizes that he "filed his Chapter 64 request on March 24, 2023, before his execution date had even been scheduled."  Finally, Appellant cites to *Thacker v. State*, 177 S.W.3d 926, 927 (Tex. Crim. App. 2005), and *Brown v. State*, No. AP-75,469 (Tex. Crim. App. July 19, 2006) (not designated for publication), for the proposition that a motion for DNA testing filed less than a month before an execution setting supports a trial court finding that the filing of the motion was made to unreasonably delay the execution of sentence or the administration of justice.  Whereas

his motion, he notes, was filed before his execution date had even been scheduled.

Appellant's argument is disingenuous. Appellant was convicted of capital murder in 2001. He challenged the use of the Wilhelm and Ellis offenses on direct appeal and in habeas applications. Chapter 64, authorizing motions for DNA testing, has been in effect since April 2001. *See Thacker*, 177 S.W.3d at 927. But Appellant waited until *after* the State filed a motion to set an execution date before he filed for DNA testing.[2] We recognize that Appellant filed his motion for DNA testing before his execution was scheduled, but that is only because the court set a later hearing on the State's motion to set a date. And, although Appellant has had 22 years since his capital murder conviction, and DNA testing has been scientifically possible throughout that time, Appellant did not move for DNA testing until March 2023, when it appeared that the setting of an execution date was imminent. *See Reed v. State*, 541 S.W.3d 759, 778 (Tex. Crim. App. 2017) (noting that circumstances surrounding the request may be considered, including: the promptness of the request, the temporal proximity between the request and the sentence's execution, and the ability to request the testing earlier). Under the facts in this case, we hold that the record supports the trial court's finding of unreasonable delay. We overrule Appellant's second point of error.

Finding no reversible error in the proceedings below, we affirm the trial court's

---

[2] The State filed a motion on February 14, 2023, to set an October execution date. Appellant filed his motion in March 2023 for DNA testing, and the court held a hearing on both matters in April 2023, thereafter setting an execution date.

order denying the motion for forensic DNA testing pursuant to Texas Code Criminal

Procedure Chapter 64.

Delivered:     September 26, 2023
Do Not Publish