

# NUMBER 13-20-00293-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## EX PARTE N.C.

### On appeal from the 54th District Court
### of McLennan County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Silva
### Memorandum Opinion by Justice Benavides

By four issues, appellant N.C. challenges the denial of his petition for writ of habeas corpus. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072. N.C. alleged in his petition and argues on appeal that: (1) the juvenile court abused its discretion by transferring his juvenile case to adult criminal court because its order did not set forth sufficient facts supporting the transfer; (2) the evidence was insufficient to support a finding that the appellee the State of Texas was unable to proceed prior to his eighteenth birthday; (3) the juvenile court's reasons were not set forth in the record; and (4) the habeas court

erred by denying his claims of ineffective assistance of counsel regarding his trial attorney was incorrect. We affirm.

## I.    BACKGROUND[1]

N.C. was charged with three first-degree felony offenses alleging aggravated sexual assault acts committed against a child family member that occurred between January and February 2006.[2] *See* TEX. PENAL CODE ANN. § 22.021(a)(1). At the time of the offenses, N.C. was fourteen years of age; the complainant was ten years old. A magistrate issued juvenile warnings to N.C. on November 10, 2008, when he was seventeen years of age. The State filed its "Petition for Determinate Sentencing" on March 24, 2009. Trial counsel was appointed for N.C. on April 20, 2009. In an affidavit, trial counsel stated that N.C. was released to his mother on November 12, 2008, and resided in Tennessee. Trial counsel explained that all of his contact with N.C. was through telephonic communication. N.C. relayed to trial counsel that he wanted a trial, and counsel asked to reset the initial July 2009 trial setting in order to review Child Protective Services (CPS) records in the case. Trial counsel stated that, during the time between trial settings, N.C. was arrested in January 2010 for aggravated burglary in Tennessee.

Prior to a trial setting in August 2010, N.C. was offered the option of taking a polygraph examination. Trial counsel stated he explained that a favorable result could result in the cases being dismissed. The August trial setting was moved and N.C. took

---

[1] The Texas Supreme Court transferred this case from the Tenth Court of Appeals in Waco to this Court pursuant to a docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] The background facts of this case are gleaned from the filings from the habeas corpus proceeding found in the clerk's record. None of the trial court's filings or reporter's record from the underlying juvenile proceeding were contained in the habeas record presented to this Court. The proceedings from the juvenile case were referenced by the habeas court in its findings.

the polygraph. However, the results were not favorable and N.C. made comments during the polygraph that were damaging to his defense. Trial was set again on November 17, 2010, but N.C. failed to appear, and a "Directive to Apprehend" was issued for him. Trial counsel believed the United States Marshals were looking for N.C. based on a conversation with N.C.'s mother.

Trial counsel explained that he had no further contact with N.C. until 2013 when N.C. was arrested and brought back to McLennan County. N.C. told him that he had been incarcerated on other offenses in Tennessee during the time he absconded. The State filed its "Petition for Discretionary Waiver" on April 4, 2014. The juvenile petition remained pending at that time; N.C. was twenty-three years old. When N.C. appeared before the juvenile court in April 2014, there was no hearing conducted because N.C. waived his right to the hearing and entered stipulations that there was probable cause to allow the charges to proceed against him and that the reason for the State's delay in prosecuting this case prior to his eighteenth birthday was beyond its control and it was not practicable to proceed. After the transfer to the adult criminal court, N.C. accepted a plea agreement with the State where he was given deferred adjudication community supervision. Upon the transfer to the adult criminal court and N.C.'s plea, the juvenile case was dismissed on January 16, 2019.

On February 12, 2020, N.C. filed an "Application for Writ of Habeas Corpus" stating he was "illegally restrained of his liberty" by "being currently subjected to terms and conditions of community supervision and ordered restitution." N.C. argued that the "JUVENILE COURT HAD NO JURISDICTION TO CERTIFY APPLICANT AFTER HE

TURNED 18 YEARS OF AGE." N.C. stated that the juvenile court "found for reasons beyond the State's control and after the State's due diligence it was not practicable for the State to proceed with the charges prior to [N.C's] 18th birthday." He argued, however, that the order "did not note the basis for such a finding or why the State waited so long to pursue the matter." N.C.'s habeas application argues that *Moore v. State*, 532 S.W.3d 400, 404–05 (Tex. Crim. App. 2017), held that "the purpose of [family code §] 54.02(j)(4)(A) is meant to limit the prosecution of an adult for an act he committed as a juvenile if his case could have reasonably been dealt with when he was still a juvenile." He also alleged that there was insufficient evidence to support the waiver of jurisdiction and that his trial counsel was ineffective. Trial counsel filed an affidavit in response to N.C.'s habeas allegations detailing his work on the case, his reasons for the delays, and his advice to N.C. once he was arrested in 2013.

The habeas court denied N.C.'s petition and later issued findings of fact and conclusions of law regarding the decision. It held[3]:

> 16.    The record in [the juvenile case] contain[s] [N.C.]'s stipulations of fact, which were joined by counsel and approved by the juvenile court. The Court finds that such stipulations were legally and factually sufficient to support the support the [sic] juvenile court's findings of fact.
>
> 17.    The Court finds that the juvenile court's Order met the legal and factual requirements to effectively waive the juvenile court's jurisdiction and transfer jurisdiction of the case and [N.C.] to this Court.
>
> 18.    The record and counsel's affidavit address [N.C.]'s claims that his counsel was ineffective in failing to investigate the facts and circumstances of the case, particularly in regard to the reasons beyond the control of the State it was not practical to proceed in juvenile court before [N.C.]'s 18th birthday. As related above, this was because [N.C.] voluntarily failed to

---

[3] Points 1–15 of the trial court's findings of fact and conclusions of law recite the procedural history of N.C.'s case.

appear for his juvenile trial, absconded, and voluntarily absented himself from the State. The court find[s] that in light of these facts, counsel's advice to stipulate to the fact that it was not practical for the State to proceed in juvenile court was not a result of deficient performance. Rather, this stipulation was made as part of a plea bargain which afforded [N.C.] the advantages of the State's offer of deferred adjudication.

19.     The Court finds that counsel adequately investigated the facts and circumstances relevant to the case, properly advised [N.C.] regarding these facts and circumstances, and adequately advised and consulted with [N.C.] regarding possible trial and plea strategies.

20.     The Court further finds that [N.C.] has failed to establish prejudice due to any deficient performance on the part of his counsel.

21.     The Court finds that the performance of [N.C.]'s trial counsel . . . was not deficient nor fell so far below the standard of prevailing professional norms, that counsel was not functioning as the counsel guaranteed [N.C.] by the Sixth Amendment.

22.     The Court finds that [N.C.] has not overcome the strong presumption that [N.C.]'s trial counsel . . . rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

23.     The Court finds that [N.C.]'s trial counsel['s] . . . performance fell within the wide range of reasonable and professional assistance.

24.     The Court finds that [N.C.]'s trial counsel['s] . . . performance was not deficient, and that specific deficient acts or omissions, if any, were not in their totality so serious as to undermine confidence in the outcome and to have deprived [N.C.] of a fair trial—one whose result is reliable—such that there is a reasonable probability that but for said deficient performance, if any, the result of the trial would have been different.

25.     The Court finds that no other findings of fact and conclusions of law should be made to resolve the issues presented by [N.C.] herein.

N.C. filed objections to the trial court's findings of fact and conclusions of law. No ruling on the objections appears in the record. This appeal followed.

## II.     STANDARD OF REVIEW

We review a habeas court's decision on an application for a writ of habeas corpus

5

under an abuse of discretion standard. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *see also Ex parte Tutton*, No. 10-14-00360-CR, 2015 WL 4384496, *2 (Tex. App.—Waco July 9, 2015, pet. ref'd) (mem. op.). "The applicant bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief." *Ex parte Nugent*, 593 S.W.3d 416, 423 (Tex. App.—Houston [1st Dist.] no pet.); *see Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995). We review the record evidence in the light most favorable to the habeas court's ruling, and we must uphold that ruling absent an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *see also Ex parte Tutton*, 2015 WL 4384496, at *2. We give almost total deference to the trial court's findings that are "based upon credibility and demeanor." *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)).

> In habeas corpus proceedings, "[v]irtually every fact finding involves a credibility determination" and "the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). In an article 11.072 habeas case, such as the one before us, the trial court is the sole finder of fact. *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011). "There is less leeway in an article 11.072 context to disregard the findings of the trial court" than there is in an article 11.07 habeas case, in which the [Texas] Court of Criminal Appeals is the ultimate fact finder.

*Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd); *see also Ex parte Tutton*, 2015 WL 4384496, at *2.

### III.   JUVENILE TRANSFER TO CRIMINAL COURT

**A.   Applicable Law**

"A juvenile court may waive its exclusive original jurisdiction and transfer a juvenile

6

case to the appropriate district court for criminal proceedings if certain statutory and constitutional requirements are met." *Ex parte Thomas*, 623 S.W.3d 370, 372 (Tex. Crim. App. 2021). "Claims that a juvenile transfer order is void are cognizable on a writ of habeas corpus because they involve the jurisdiction of the trial court to hear a case." *Id.* at 375; *see* TEX. CODE CRIM. PROC. ANN. § 11.072 (establishing procedures for an application of a writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from "an order or a judgment of conviction ordering community supervision"); *Ex parte White*, 506 S.W.3d 39, 45 (Tex. Crim. App. 2016) (noting that "[a]rticle 11.072 filers . . . include individuals on regular community supervision and deferred adjudication"). "[F]actually-supported, case-specific findings in the transfer order are not required by the statute to bestow jurisdiction or the constitution as a matter of fundamental, constitutional due process." *Ex parte Thomas*, 623 S.W.3d at 375–76.

"The transfer of a juvenile offender from juvenile court to criminal court for prosecution as an adult should be regarded as the exception." *Id.* at 376. "For a juvenile court to validly waive jurisdiction and transfer a case to a criminal court, it must satisfy the terms of the statue." *Id.*

Under § 54.02(a) of the Texas Family Code, a juvenile court may transfer to the criminal district court for trial a case involving a person who was fourteen years or older at the time he is alleged to have committed a first-degree felony offense but who remains a child at the time of transfer. TEX. FAM. CODE ANN. § 54.02(a). But if the person who is alleged to have committed a felony as a child has reached his eighteenth birthday, the juvenile court must make the transfer under § 54.02(j). *See id.* § 54.02(j). Section 54.02(a)

7

imposes requirements for transfer to criminal district court that § 54.02(j) does not. *Ex parte Thomas*, 623 S.W.3d at 378.

Under § 54.02(a), "[t]he juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

 (A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is . . . a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; [and]

 . . . .

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

TEX. FAM. CODE ANN. § 54.02(a). Subsection (f) states:

In making the determination required by Subsection (a) of this section, the court shall consider, among other matters:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

8

*Id.* § 54.02(f). Section 54.02(h) states that "[i]f the juvenile court waives jurisdiction, it shall state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court, and shall transfer the person to the appropriate court for criminal proceedings." *Id.* § 54.02(h).

But the transfer of an adult who is alleged to have committed the felony as a child occurs under § 54.02(j), which states in pertinent part:

> The juvenile court may waive its exclusive jurisdiction and transfer a person to the appropriate district court or criminal district court for criminal proceedings if:
>
> (1)     the person is 18 years of age or older;
>
> (2)     the person was:
>
> . . .
>
> (B)     14 years of age or older and under 17 years of age at the time the person is alleged to have committed . . . a felony of the first degree other than an offense under [§] 19.02, Penal Code [murder];
>
> . . .
>
> (3)     no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted;
> (4)     the juvenile court finds from a preponderance of the evidence that:
>
> (A)     for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person; or
>
> (B)     after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:
>
> (i)     the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person;

9

        (ii)      the person could not be found; or

        (iii)     a previous transfer order was reversed by an appellate court or set aside by a district court; and

    (5)    the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged.

*Id.* § 54.02(j). "Subsection (j) does not require the juvenile court to consider [subsection] (f)['s] factors." *Ex parte Thomas*, 623 S.W.3d at 379.

## B.    Discussion

N.C.'s first three issues on appeal all relate to the district court's jurisdiction over him after the juvenile court transferred its case after his eighteenth birthday. N.C. alleges that (1–2) the juvenile court's order did not set out facts and the evidence was insufficient to support its decision that the case against him could not have been pursued before his eighteenth birthday; and (3) the juvenile court's order did not contain facts that support its decision to waive jurisdiction.

In his brief, N.C. argues that the juvenile court's transfer order did not follow the requirements under § 54.02(a) and was therefore, deficient. However, N.C.'s transfer did not fall under § 54.02(a), but under § 54,02(j) because he had reached the age of an adult at the time the hearing was conducted. Additionally, N.C. waived his right to a hearing and entered stipulations as to probable cause and that the delay was for reasons outside of the State's control. In *Ex parte Thomas*, the court of criminal appeals specifically stated that § 54.02(a) has requirements that § 54.02(j) does not. *See id.* at 378. N.C. also relies on the holding in *Moon v. State* to support his arguments stating that because there were no specific facts set forth in the order, then the district court never obtained jurisdiction

over him; however, *Moon* has been explicitly overruled by the Texas Court of Criminal Appeals in which it stated that "[n]othing" from the holding in *Moon* remained good law. 451 S.W.3d 28, 36 (Tex. Crim. App. 2014), *rev'd by Ex parte Thomas*, 623 S.W.3d at 381.

Although N.C. argues that the juvenile court's transfer order was deficient because it did not include specific facts relating to the decision to transfer, "the requirement of case-specific fact-findings to support the reasons for the transfer are not required by the text of the statute or constitutional precedent." *Ex parte Thomas*, 623 S.W.3d at 381. "A juvenile transfer order entered after the required transfer hearing and complying with the statutory requirements constitutes a valid waiver of jurisdiction even if the transfer order does not contain factually-supported, case-specific findings." *Id.* at 383.

Here, the juvenile court's order followed the requirements of § 54.02(j). *See* TEX. FAM. CODE ANN. § 54.02(j). The order stated that: N.C. was over eighteen years of age; N.C. was fourteen years of age when he committed the alleged first-degree felony offense; no adjudication hearing had occurred; and it was due to reasons beyond the State's control that it did not proceed prior to N.C.'s eighteenth birthday. *See id.* N.C. stipulated that there was probable cause to proceed and that it was due to reasons beyond the State's control that the State did not proceed with the charges against him before his eighteenth birthday. Additionally, according to trial counsel's affidavit, N.C. lived in Tennessee, asked for continuances to prepare for trial and to take a polygraph, and then absconded for years. Those facts support the trial court's decision that it was beyond the State's control to have tried N.C. prior to his eighteenth birthday.

11

The order from the juvenile court, supported by the holding in *Ex parte Thomas*, was supported by the evidence and was sufficient to transfer N.C. from juvenile court to criminal district court. 623 S.W.3d at 383. We overrule N.C.'s first three issues.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his fourth issue, N.C. alleges his habeas petition should have been granted on the grounds that his juvenile trial counsel was ineffective.

### A. Standard of Review and Applicable Law

"A juvenile has a right to effective assistance of counsel." *In re F.L.R.*, 293 S.W.3d 278, 280 (Tex. App.—Waco 2009, no pet.). "The familiar *Strickland* [*v. Washington*] standard is used to resolve ineffective assistance claims." *Id.* (citing *In re S.C.*, 229 S.W.3d 837, 842 (Tex. App.—Texarkana 2007, pet. denied)); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish a claim for ineffective assistance of counsel, N.C. must show that: (1) counsel's performance was deficient; and (2) there is a reasonable probability that the outcome would have been different but for counsel's deficient performance. *Id.* Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. "It is not sufficient that [N.C.] show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. Rather, the record must affirmatively demonstrate trial counsel's alleged ineffectiveness." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). N.C. must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance" and that the conduct constituted sound trial strategy. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.

12

Crim. App. 1999).

**B.     Discussion**

N.C. alleges that trial counsel was ineffective because "there was an issue with proceeding against [him] several years after he turned 18." N.C.'s trial counsel filed an affidavit where he addressed N.C.'s allegations against him. He stated he was appointed to represent N.C. on April 20, 2009. He explained the "Petition for Determinate Sentencing" had been filed in March 2009, and at that time, N.C. was living in Tennessee with his mother. Trial counsel also said "I cannot attest to matters that occurred prior to my appointment in April 2009."

Trial counsel then detailed the steps and actions he took once he was appointed to the case. He explained he asked for a continuance on the initial trial setting in July 2009 in order to further review the records in the case. During that time, trial counsel stated that N.C. was arrested in Tennessee. As the next trial setting approached, the State offered N.C. an opportunity to take a polygraph. Trial counsel detailed that he told N.C. "that if the results were favorable then there was an opportunity that this case would be dismissed." The trial was postponed so that N.C. could take the polygraph, which had unfavorable results that were "damaging to our defense." The trial was reset for November 2010, and N.C. failed to appear.

Trial counsel said he did not have any contact with N.C. until 2014 when N.C. was brought to McLennan County. N.C. admitted to trial counsel that he did not appear for trial in 2010 because he had been on the "lam" due to additional criminal charges in Tennessee. Trial counsel negotiated a plea agreement with the State and relayed it to

13

N.C., while explaining that since N.C. absconded, he believed the State could transfer the case to criminal court under the family code. N.C. agreed and followed trial counsel's suggestions.

The habeas court found that trial counsel did not act in a manner that was ineffective, documenting this in its findings of fact and conclusions of law. We defer to the trial court's findings and agree that N.C. did not show that trial counsel acted in a manner that was ineffective. *See Mowbray*, 943 S.W.2d at 465. Nothing in the record before this Court affirmatively demonstrates trial counsel was ineffective. *See Mata*, 226 S.W.3d at 430. We do not find that N.C. overcame the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson*, 9 S.W.3d at 813. We overrule N.C.'s fourth issue.

## V. CONCLUSION

We affirm the trial court's denial of N.C.'s petition for writ of habeas corpus.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
28th day of October, 2021.